**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : No. 21-CR-563 (JDB) |
| | : |
| **VICTORIA CHARITY WHITE,** | : |
| | : |

**DEFENDANT WHITE'S MOTION TO DISMISS COUNT ONE OF THE
INDICTMENT WITH INCORPORATED
MEMORANDUM OF POINTS AND AUTHORITIES**

COMES NOW Defendant, Victoria Charity White, by and through undersigned counsel, and hereby respectfully moves this Honorable Court for the entry of an Order dismissing Count One of the Indictment, which alleges a violation of 21 U.S.C. § 231(a)(3) and (2). As grounds, the following is stated:

**I.    BACKGROUND**

A jury trial is scheduled for May 8, 2023.

Ms. White is charged by Superseding Indictment (Doc. 32) with violations of 18 U.S.C. § 231(a)(3) and 2 Civil Disorder and Aiding and Abetting, 1752(a)(1) and (2) Entering and Remaining in a Restricted Building or Grounds, and Title 40 U.S.C.§ 5104(e)(2)(D) Disorderly Conduct in a Capitol Building or Grounds.

Count One of the Indictment, alleges a violation of 21 U.S.C. § 231(a)(3) – "Civil Disorder." [1]

Count One of the Indictment states:

On or about January 6, 2021, within the District of Columbia, . . . VICTORIA WHITE committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer law enforcement officer lawfully engaged in the lawful performance of their duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

## II.   STANDARDS OF REVIEW

**A.  Motion to Dismiss**

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the

---

1. Ms. White was charged in an indictment on 9/8/21 (Doc 22) and then a Superseding Indictment on 1/26/22 (Doc 32).  The leading charge was Title 18 U.S.C. §231 in both. References herein to Ms. White's "Indictment" will be referring to Doc. 32.

-2-

same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)).

A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(B).

Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." FED. R. CRIM. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009)(internal quotations omitted).

### B. <u>Statutory Interpretation</u>

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute

must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

### C. <u>Vagueness</u>

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein,* 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine

protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983)).

### III.   ARGUMENT

#### A.   Count One Depends on Allegations That There Existed a "Civil Disorder" That Negatively Affected Commerce or a Federally Protected Function.

Count One charges Ms. White with violating 18 U.S.C. § 231(a)(3), which makes it a crime to obstruct an officer trying to quell a civil disorder. That section of the U.S. Code provides:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—
>
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).

By its plain text, § 231(a)(3) requires that the Government allege four elements. First, that a "civil disorder" existed at the time of the defendant's alleged conduct. Second, that civil disorder "in any way or degree obstruct[ed], delay[ed],

or adversely affect[ed] commerce or the movement of any article or commodity in commerce or the conduct and performance of any federally protected function." Third, that one or more "law enforcement officers" were lawfully engaged in the lawful performance of their official duties incident to and during the commission of that civil disorder. And fourth, that the defendant knowingly committed or attempted to commit an act with the specific intent to obstruct, impede, or interfere with those officers. Id.; see also, e.g., *United States v. Rupert*, Case No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16 (D. Minn. Jan. 6, 2021) (listing elements based on United States v. Casper, 541 F.2d 1275, 1276 (8th Cir. 1976) (per curiam)); Final Jury Instructions, United States v. Reffitt, Case No. 21-cr-32 (D.D.C. Mar. 7, 2022), ECF No. 119, at 32 (similar articulation of elements in different order).

Thus, the Government must prove not only that a "civil disorder" existed, but also that it took one of the three forms enumerated in the statute. A "civil disorder" is "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). And Congress made three types of "civil disorders" cognizable under § 231(a)(3): (1) a "civil disorder" that "obstruct[ed], delay[ed], or adversely affect[ed] commerce"; (2) a "civil disorder" that "obstruct[ed], delay[ed], or adversely affect[ed]. . . the movement of

any article or commodity in commerce"; or (3) a "civil disorder" that "obstruct[ed], delay[ed], or adversely affect[ed] the conduct or performance of any federally protected function." Id. § 231(a)(3); see ANTONIN SCALIA & BRYAN GARNER, READING LAW 116 (2012) ("Under the conjunctive/disjunctive canon, and combines items while or creates alternatives."); see also, e.g., *United States v. Mostofsky*, Crim. Action No. 21-138 (JEB), 2021 WL 6049891, at *3 (D.D.C. Dec. 21, 2021) (Government could seek to obtain a conviction at trial "via the federally protected function prong" by proving a "civil disorder" that "obstructed, delayed, or adversely affected a federally protected function" (alteration adopted) (internal quotation marks omitted)); *United States v. Phomma*, Case No. 3:20-cr-00465-JO, 2021 WL 4199961, at *4 (D. Ore. Sept. 15, 2021) (Section 231(a)(3) concerns "civil disorders that affect interstate commerce").

In charging a violation of § 231(a)(3), the Indictment largely parrots the statute. Count One alleges: On or about January 6, 2021, within the District of Columbia, VICTORIA WHITE committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer law enforcement officer lawfully engaged in the lawful performance of their duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the

movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

For purposes of § 231, "commerce" includes commerce across State or D.C. lines, between two points within a State or D.C. but involving interstate travel, or "wholly within the District of Columbia." 18 U.S.C. § 232(2). The Indictment does not allege that Ms. White resided outside the District of Columbia. Equally sparse are other factual allegations that might concern a "federally protected function." Section 232(3) defines a "federally protected function," for purposes of § 231, as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." 18 U.S.C. § 232(3) (emphasis added). By definition then, a "civil disorder" that affects the "conduct or performance of a federally protected function" is a "civil disorder" that affects the conduct or performance of a federal actor trying to execute her duties under federal law.

The Court must dismiss any count in the indictment that fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment must "inform the

defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014). And Rule 7(c) of the Federal Rules of Criminal Procedure "effectuates that understanding, requiring an indictment to contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (quoting Fed. R. Crim. P. 7(c)(1)). It is not enough for an indictment simply to parrot the statute and its generic terms. To survive a defendant's motion to dismiss, the indictment must set forth, on its face, the "essential facts" of the offense and "descend to particulars," beyond statutory boilerplate. Fed. R. Crim. P. 7(c)(1); *Russell v. United States*, 369 U.S. 749, 765 (1962); *United States v. Ballestas*, 795 F.3d 138, 148–49 (D.C. Cir. 2015). In other words, "the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980).

The indictment's sufficiency is based on its four corners. The court "is limited to reviewing the face of the indictment, and more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis in original). "Adherence to the language of the indictment is essential

because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).

### B. Section 231(a)(3) is Unconstitutionally Vague

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). As the Supreme Court has explained,

> [i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (internal citations and quotations omitted). As mentioned by the Supreme Court in *Grayned*, vagueness

concerns are most acute when the statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (Where "a statute's literal scope [reaches] expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts."). Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. The following examples are illustrative of §231(a)(3)'s vagueness.

### 1. "Any Act to Obstruct, Impede, or Interfere"

By penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing *any* distinction that could exclude acts undertaken merely to convey a message or symbolic content. *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary

-11-

or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)). The phrase "any act to obstruct, impede, or interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling, or even grievous, violent assaults.

### 2. "Incident to and During the Commission of a Civil Disorder"

The phrasing "incident to and during the commission of a civil disorder" is also problematic for its vagueness. The term "civil disorder," as defined under §232(1), is extremely far-reaching, applying to "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of injury to the property." 18 U.S.C. § 232(1). This definition of "civil disorder" offers no limitation to solve the vagueness problem because it could apply to virtually any tumultuous public gathering to which police might be called, not just largescale protests or riots. Further, there is no indication within the statute whether the defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event. Moreover, there were, in fact, organizations with permits to demonstrate around the

Capitol on January 6, 2021. (See Ex. 1-6). The United States Government, through the use of these lawfully issued permits, approved, instructed and allowed demonstrators to be within the general vicinity of a civil disorder on January 6th. They did so without warning to these demonstrators that civil disorder was taking place on or near the area for which they had been told to lawfully assemble. Ms. White argues that the permitted First Amendment Assembly zones encouraged demonstrators to be in the general vicinity of a civil disorder and were not adequately defined or enforced that day. This created a larger permissible Free Speech demonstration area on the West side of the Capitol grounds on January 6.

### 3. Lack of Scienter

The Supreme Court has repeatedly affirmed that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.* at 499. But here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating 'a trap for those who act in good faith.'" *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither. The absence of a scienter/*mens rea* element weighs in further favor of the statute's unconstitutionality.

By enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *United States v. Stevens,* 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates v.*

*Cincinnati,* 402 U.S. 611, 614 (1971), thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction." *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988) (holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or her duties, finding that the ordinance's sweeping nature was neither "inevitable" nor "essential to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words," it wrongly gave police "unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id.* at 465. Similarly, here, §231(a)(3) casts far too wide a net. By expansively encompassing "any act" that could interfere with the duties of a police officer or firefighter during a civil disorder, §231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that otherwise put persons or property in imminent danger. *C.f. United States v. Reese*, 92 U.S. (2 Otto) 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and

leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."). Moreover, the statute does not weed out those acts with protected expressive content or those that occur in a traditional public forum. Instead, as shall be developed further, *infra*, §231(a)(3) reaches a substantial amount of

expressive conduct, and without clear boundaries, the law chills free speech and invites discriminatory application by law enforcement and the government.

### C. Section 231(a)(1) Impermissibly Criminalizes Protected Speech under the First Amendment

"In the First Amendment context, a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The first Amendment protects expressive conduct like cross-burning, flag-burning and assembly in inconvenient places.[2] Conduct is considered expressive, and therefore protected, under the First

---

[2] *See Virginia v. Black*, 538 U.S. 343, 365-66 (2003) ("[S]ometimes the cross burning is a statement of ideology, a symbol of group solidarity"); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989) (flag burning constituted "expressive conduct" protected by the First Amendment); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming that "sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment.").

Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

The plain language of §231(a)(3) is at odds with the protections of the First Amendment. Indeed, the broadness of §231(a)(3)'s scope would presumably authorize a felony conviction for a bystander who yells at police to desist from an arrest, one who flips off officers to distract or encourage resistance, or one who records police activity with a cell phone. *See Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glick v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public places."). The First Amendment does not permit an unqualified prohibition on "interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-462; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or

molest a police officer in the lawful discharge of his duties.").

Such broad criminal statutes like §231(a)(3) "must be scrutinized with particular care." *Hill*, 482 U.S. at 459; *see also Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."). Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* Section 231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep.

### D. Section 231(a)(3) Cannot be Saved by Construction Without Violating the Constitutional Separation of Powers

Judicial interpretation cannot save §231(a)(3) from its constitutional invalidity. A statute's vagueness does not permit judges to "rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481. Rather, "[w]hen Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

**WHEREFORE,** for the foregoing reasons and such other reasons that may appear just and proper, Ms. Victoria White requests this Court to grant this motion and dismiss Count One of the Indictment.

Defendant, by counsel, requests a hearing on this motion.

Respectfully Submitted,

　　/s/ Nicole Cubbage
Nicole Cubbage
DC Bar No. 999203
712 H. Street N.E., Unit 570
Washington, D.C.  20002
703-209-4546
cubbagelaw@gmail.com
Attorney for Victoria Charity White

Certificate of Service
I certify that a copy of the forgoing was filed electronically for all parties of record on this 24$^h$ day of February, 2023.
　　/s/
Nicole Cubbage
Attorney for Ms. White

Dated: February 24, 2023