**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-563 (JDB)** |
| **v.** | : | |
| | : | |
| **VICTORIA CHARITY WHITE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS COUNT ONE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion to Dismiss Count One of the Superseding Indictment. ECF No. 55. Count One of the Superseding Indictment charges the defendant with Civil Disorder, in violation of 18 U.S.C § 231(a)(3). ECF No. 32. The indictment sufficiently pleads the charge against the defendant, and contrary to the defendant's assertions, the statute is neither unconstitutionally vague nor overbroad. For the reasons outlined below, the defendant's motion to dismiss is unsupported by the law and the United States respectfully requests the Court deny it in full.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

1

One of these unlawful occupants was the defendant, Victoria White, who travelled from Minnesota to Washington, D.C. to protest.  On January 6, the defendant joined a group of individuals who marched to the Capitol, made her way onto restricted Capitol grounds, and pushed her way to the Lower West Terrace tunnel.  Shortly before 4:00 p.m., video depicts the defendant making her way through the crowd on the Lower West Terrace and approaching the line of Metropolitan Police Officers who were barricading the tunnel's entrance.

As the defendant shoved through the crowd, she assisted other rioters into the tunnel and cheered as they attacked the police officers inside.  She continued to push forward, and shortly after 4:00 p.m., she made it to the front of the tunnel, where she was confronted by multiple police officers who pushed her back.  As White moved forward, other rioters were simultaneously climbing the walls of the tunnel, throwing objects at the officers, spraying the officers with a liquid from a large spray cannister, beating the officers with long poles, and grabbing the officers' riot shields.

Ultimately, the defendant entered far enough into the tunnel that she was pulled through by police officers, who placed her under arrest and handcuffed her.  She was processed and released later that evening.  Based on her actions on January 6, 2021, the defendant was charged in a Superseding Indictment with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Entering and Remining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), and Disorderly Conduct in a Capitol Building or Grounds, in violation of 18 U.S.C. § 5104(e)(2)(D).  The defendant's motion and the government's response focuses exclusively on Count One of the Superseding Indictment relating to the violation of 18 U.S.C. § 231(a)(3).

2

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient under the Constitution and Rule 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added). Neither of these things occurred here.

A criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. But criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940

3

(D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the government can prove. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion [to dismiss], Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, 605 F.Supp.3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 596 F.Supp.3d 90, 96 (D.D.C. 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)).

## **ARGUMENT**

Section 231(a)(3) provides that:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or the performance of any federally protected function—
> Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).  Count One of the Superseding Indictment alleges:

On or about January 6, 2021, within the District of Columbia, **VICTORIA WHITE**, committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

As explained below, Count One properly alleges an offense and is more than sufficient to overcome the defendant's challenges to its validity.  Similarly, the defendant's additional claim that the offense charged is unconstitutionally vague and overbroad is without merit and has been rejected by this Court.

## I.      THE SUPERSEDING INDICTMENT ALLEGES A VIOLATION OF 18 U.S.C. § 231(a)(3).

Count One of the Superseding Indictment alleges sufficient facts to properly charge an offense under 18 U.S.C. § 231(a)(3) and to put the defendant on notice of the crime with which she is charged. Nevertheless, the defendant claims that Count One fails to state a claim pursuant to Rule 12 of the Federal Rules of Criminal Procedure in two ways: (1) Count One does not allege that the defendant resided outside the District of Columbia to satisfy the commerce element of 18 U.S.C. § 231(a)(3); and (2) Count One does not allege sufficient facts regarding an adverse effect on a federally protected function. Both of these arguments fail.

First, the defendant's argument that the indictment needs to allege that she resided outside of the District of Columbia, ECF No. 55 at 8, fundamentally misunderstands the term "commerce" as it relates to the District of Columbia. Section 231(a)(3) may be violated where, like here, a defendant's criminal conduct was committed wholly within the District of Columbia. Specifically, Article I, Section 8, Clause 17 of the Constitution states:

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States,

and the Acceptance of Congress, become the Seat of the
Government of the United States….

U.S. Const. Art. I, § 8, Cl. 17.

Congress's power under Clause 17 "is plenary." *Palmore v. United States*, 411 U.S. 397
(1973). "Not only may statutes of Congress of otherwise nationwide application be applied to the
District of Columbia, but Congress may also exercise all the police and regulatory powers which
a state legislature or municipal government would have in legislating for state or local purposes."
*Id*. "Congress 'may exercise within the District all legislative powers that the legislature of a state
might exercise within the State … so long as it does not contravene any provision of the
constitution of the United States.'" *Id*. (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 5 (1899)).
"Congress may legislate within the District for every proper purpose of government. Within the
District of Columbia, there is no division of legislative powers such as exists between the federal
and state governments." *Neild v. District of Columbia*, 110 F.2d 246, 249 (D.C. Cir. 1940) (citing
*Kendall v. United States ex rel. Stokes*, 37 U.S. 524 (1838); *Atlantic Cleaners & Dyers, Inc. v.
United States*, 286 U.S. 427 (1932); and *O'Donoghue v. United States*, 289 U.S. 516 (1933)).
"[W]hen it legislates for the District, Congress … exercise[es] complete legislative control as
contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the
limited sovereignty which Congress exercises within the boundaries of the states, on the other."
*Id*. at 250-51. *See also Hyde v. S. Ry. Co*., 31 App. D.C. 466, 469 (D.C. Cir. 1908) ("The legislative
power of Congress over the District of Columbia and the Territories [is] plenary, and [does] not
depend[] upon the interstate-commerce clause").

By enacting Section 231(a)(3), Congress relied on its Clause 17 power with respect to the
District of Columbia.  That statute prohibits "any act" that "obstruct[s], impede[s], or interfere[s]
with any … law enforcement officer … engaged in [his] official duties incident to and during the

commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 231(a)(3) (emphasis added). "Commerce," as used in § 231(a)(3), "means commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) *wholly within the District of Columbia*." 18 U.S.C. 18 U.S.C. § 232(2) (emphasis added).  Thus, the Superseding Indictment does not need to allege that the defendant resided outside the District of Columbia to state a violation of 18 U.S.C. § 231(a)(3).  Moreover, under the plain language of the statute, it is the "civil disorder" that must "obstruct[], delay[], or adversely affect[] commerce," not the individual defendant.  18 U.S.C. § 231(a)(3).  Count One need not provide any further specificity about how commerce was obstructed, delayed, or adversely affected in order to state a legally sufficient charge.  *United States v. Grider*, 617 F.Supp.3d 42, at 50 (D.D.C. Jul. 29, 2022) ("Because Congress has plenary authority to regulate activities within the District of Columbia, the Court need not address Defendant's argument that section 231 exceeds Congress' authority to regulate interstate commerce.") *United States v. Sargent*, Case No. 21-cr-00258 (TFH), 2022 WL 1124817 at *4 (D.D.C. Apr. 14, 2022) (rejecting argument that failure to specify what article or commodity was obstructed delayed, or adversely affected made Section 231(a)(1) count insufficient).

Second, the defendant argues that Count One fails to adequately plead a federally protected function.  ECF No. 55 at 8.  But that argument also fails.  As relevant here, Section 232 defines "federally protected function" to mean "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof."  18 U.S.C. § 232(3).  Here, the Superseding Indictment tracks the language of the statute itself and states, "during the commission of a civil disorder which in any

way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function." ECF No. 32. *See Williamson*, 903 F.3d at 130 (denying a motion to dismiss when "the indictment echoes the operative statutory text while also specifying the time and place of the offense.").

An indictment is sufficient if it contains the elements of the charged offense and enough detail to allow a defendant to prepare a defense and invoke the Double Jeopardy Clause if necessary. *Hamling*, 418 U.S. at 117-119; *United States v. Resendiz-Ponce*, 549 U.S. 102, 108-10 (2007); *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("An indictment must contain the elements of the offense intended to be charged. But the validity of an indictment is not a question of whether it could have been more definite and certain. Rather, to be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.") (citations omitted). The defendant's "guilt does not hinge on which federally protected function the government references, but that it is a federally protected function. *Sargent*, 2022 WL 1124817, at *4 (emphasis omitted). Accordingly, Count One remains valid even without alleging further details concerning the federally protected function.

## II.      SECTION 231(A)(3) IS CONSTITUTIONALLY VALID.

By isolating various statutory terms, *see, e.g.*, ECF No. 55 at 12 ("civil disorder"), and 11 ("any act to obstruct, impede, or interfere"), the defendant attempts to argue that § 231(a)(3) is either unconstitutionally vague or overbroad. At least four judges in this district—including this Court —have recently rejected nearly identical challenges to § 231. *See United States v. Mostofsky*, 579 F.Supp.3d 9 (D.D.C. Dec. 21, 2021) (rejecting overbreadth challenges); *United States v. Nordean*, 579 F.Supp.3d 28, 57-58 (D.D.C. Dec. 28, 2021) (rejecting vagueness and

overbreadth challenges); *McHugh,* 583 F. Supp. 3d at 23–29 (rejecting vagueness and overbreadth challenges); *United States v. Fischer*, No. 21-cr-234 (CJN), 2022 WL 782413, at *2–4 (D.D.C. Mar. 15, 2022) (rejecting vagueness and overbreadth challenges).[1]   The government respectfully requests that the Court again deny this motion because, reading the statute as a whole, it passes muster.   Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical case on the edge where application of a law might be questionable, yet the defendant erroneously urges the Court to do so.   Instead, the defendant must demonstrate either that the statute fails to provide sufficient notice of what conduct constitutes a violation or that the statute could be unconstitutionally applied in a significant segment of cases.[2]   *See Fischer*, 2022 WL 782413, at * 3–4.  The defendant fails to meet both of these high bars.

## A.   SECTION 231(A)(3) IS NOT VOID FOR VAGUENESS.

The defendant argues that "Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited."  ECF No. 55 at 11.  But federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional

---

[1] A number of courts outside this circuit have also recently rejected similar challenges to § 231. *See United States v. Phomma*, 561 F.Supp.3d 1059, 1067 (D. Or. 2021); *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16–*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

[2] A more stringent standard applies to non-First Amendment cases because the defendant must show that no set of circumstances exists under which the [law] would be valid," or the litigant must "show that the law lacks a plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quotation omitted). Several of the defendant's arguments that do not implicate the First Amendment are in fact subject to the more stringent standard. But because the defendant's arguments fail under both standards, the government applies the more permissive standard throughout its Response.

bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).  Ultimately, the defendant cannot overcome this presumption because § 231(a)(3) is not constitutionally vague.  *See McHugh*, 583 F. Supp. 3d at 24; *Nordean*, 579 F.Supp.3d 28, 57-58.  It provides sufficient notice of the conduct it prohibits.

The terms the defendant attacks, such as "any act to obstruct, impede, or interfere," ECF No. 55 at 11, and "incident to and during the commission of a civil disorder," *id.* at 12, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement[,]" *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Nordean,* 579 F.Supp.3d at 57  (observing that "there are specific fact-based ways to determine whether a 'defendant's conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder[]").  Like a similar challenge rejected by this Court, the defendant's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation—the latter is perfectly normal, while the former is indicative of constitutional difficulty."  *McHugh*, 583 F. Supp. 3d at 27.  Indeed, § 231(a)(3) does not prohibit mere presence at a civil disorder but rather, "acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer" in the course of that disorder. *See id.* at 25.  It punishes intentional conduct, not "mere inadvertent conduct."  *United States v. Featherston*, 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to defendant's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, like statutes that turn on subjective judgments of whether a defendant's conduct was "annoying" or "indecent," or those that depend on the victim's state of mind.  *See Nordean*, 579 F.Supp.3d at 57-58; *see also Williams*, 553 U.S. at 306.

"An ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh*, 583 F. Supp. 3d at 27.

In addition, § 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing," "impeding," or "interfering with" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.*, 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice*, 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties); *see also* Cal. Penal Code § 148 (prohibiting resisting, delaying, or obstructing any peace officer or emergency medical technician); *State v. Illig-Renn*, 341 Or. 228 (2006) (rejecting constitutional attacks leveled against O.R.S. 162.247(1)(b), which prohibits interference with a police officer); *State v. Steen*, 164 Wash. App. 789, 808 (2011) (rejecting as-applied constitutional challenge to RCW 9A.76.020(1), which criminalizes obstructing police officers).

The defendant's vagueness argument also fails because her conduct falls plainly within the ambit of § 231(a)(3).  The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F.Supp.3d at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010)); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute] is vague as applied to his conduct"). The conduct at issue here squarely satisfies § 231(a)(3).  The January 6, 2021, attack on the United States Capitol by a mob of thousands, some of whom assaulted law enforcement officers, was

clearly a "civil disorder."   And there is no question that the defendant participated in the disorder. The only real question for trial on Count One is whether the defendant's conduct "obstruct[ed], impede[d], or interfere[d] with" law enforcement officers who were engaged in their official duties in response to that civil disorder.

While the Court should reject the vagueness claim based solely on the statute and the indictment, the government expects its evidence will show that the defendant was not some bystander yelling at police to desist.  The government anticipates that officers will testify that one of their objectives, broadly, was to safely clear the Capitol building of rioters, and the government's evidence will show that the defendant acted with specific intent to hinder this and other objectives. To this end, the statute sufficiently "provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Despite the defendant's arguments, "the terms [she] attacks do not carry the potential for misunderstanding[.]" United *States v. Fischer,* Case No. 21-CR-234 (CJN), 2022 WL 782413, at *3 (D.D.C. Mar. 15, 2022).

### 1. The Issuance of Permits is Not Relevant to the Vagueness Analysis.

The defendant argues that because "there were, in fact, organizations with permits to demonstrate around the Capitol on January 6, 2021," and that because the protest zones were "not adequately defined or enforced that day," that this makes the term "civil disorder" under Section 231(a)(3) somehow vague.  ECF No. 55 at 12.  The defendant's arguments as to this point are misplaced.  The issuance of a permit or the defendant's alleged confusion regarding where she was permitted to be on January 6 are factual issues.  At this point, the defendant has not raised a legal issue which may be brought under a motion to dismiss pursuant to Rule 12(b)(3).  Moreover, such factual issue, even if appropriately brought before the Court at this stage of litigation has no bearing

on the constitutionality of Section 231(a)(3) and is not relevant for statutory interpretation purposes.

### 2.  Section 231(a)(3) Contains a *Mens Rea* Requirement.

The defendant's vagueness assertions also ignore the fact that § 231(a)(3) requires *criminal intent*, which narrows its scope.  *See McHugh*, 583 F. Supp. 3d at 25.  The defendant argues that "Section 231(a)(3) contains no scienter requirement, thus creating a trap for those who act in good faith."   ECF No. 55 at 14 (citations omitted).   Taking a step back from the defendant's mischaracterizations, the statute plainly criminalizes the intentional interference with the lawful activities of police and firefighters during a civil disorder. It prohibits not merely a person's presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971).  The government respectfully requests the Court find, consistent with prior rulings, that "§ 231(a)(3) is a specific intent statute, criminalizing only acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer."   *McHugh*, 583 F. Supp. 3d at 25.  That express scienter requirement addresses any vagueness concerns and therefore, the defendant's motion should be denied on this ground as well.

The civil disorder statute punishes only concrete, intentional "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere with" firefighters or law enforcement. 18 U.S.C. § 231(a)(3).  Contrary to the defendant's argument, those terms are quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether the defendant's conduct was "annoying" or "indecent."  *See United States v. Williams*, 553 U.S. 285, 293 (2008).  There are numerous federal and state statutes that criminalize obstructing the government's efforts to enforce the law and maintain public order.

*See, e.g.*, 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of tax laws); *see also United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) (holding that the federal obstruction of justice statute, 18 U.S.C. § 1503, is neither overbroad nor vague); *United States v. Brice*, 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101–20.305, which prohibits impeding or disrupting government duties).

Notably, two circuits have already endorsed such a construction of this statute.   As the Seventh Circuit has noted:

> It is true that Section 231(a)(3) does not specifically refer to intent, but it only applies to a person who "commits or attempts to commit any act to obstruct, impede, or interfere" with firemen or law enforcement.  Under such phraseology, it will not be presumed that Congress intended strict liability for inadvertent or accidental occurrences where, as here, the crime is grounded on the common law.

*Nat. Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969). Two years later, the Eighth Circuit agreed that "§ 231(a)(3) must be construed to require intent." *Mechanic*, 454 F.2d at 854.

The Seventh Circuit's reasoning in *National Mobilization Committee* is highly persuasive as the court's reading of the statutory language also supports a finding that Congress intended a *mens rea* requirement in Section 231(a)(3).   The plain language of the statute requires proof that the "act" was done "to obstruct, impede, or interfere with a police officer or firefighter."   The natural reading of this is that the United States must prove the defendant's intent in carrying out the "act" was "to obstruct, impede, or interfere with."   This Court, like the Eighth Circuit in *Mechanic*, should adopt the Seventh Circuit's reasoning and construe Section 231(a)(3) as

containing an intent element.

Even where statutes do not expressly contain a scienter requirement, courts "generally interpret [ ] criminal statutes to include broadly applicable scienter requirements, even when the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (quoting *United States v. X-Citement Video, Inc.*, 531 U.S. 64, 70 (1994)); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a mens rea element even when none appears on the face of the statute."). As the Supreme Court "has made clear[,] scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 129 (2007); *accord Jones*, 975 F.3d at 1048 (noting that "even laws that are in some respects uncertain may be upheld against a vagueness challenge if they contain a scienter requirement").

The intent element in Section 231(a)(3) is a powerful limitation on criminal liability, and the concerns described in the defendant's motion are illusory. Section 231(a)(3) does not prohibit a person's presence at a civil disorder, nor a person's participation in a civil disorder. It covers intentional conduct, not "mere inadvertent conduct." *Featherston*, 461 F.2d at 1122. Section 231(a)(3) strictly prohibits only obstructive conduct and unprotected speech, such as threats. The statute's intent is plain and provides the defendant with ample notice; therefore the defendant's motion should be denied.

**B.   SECTION 231(A)(3) IS NOT UNCONSTITUTIONALLY OVERBROAD.**

Many of the defendant's arguments and, most explicitly, her arguments concerning the term "civil disorder," ECF No. 55 at 12, and her arguments regarding constitutionally protected First Amendment speech, *id*. at 16, are essentially overbreadth arguments —she contends that section 231(a)(3) criminalizes too wide an array of activity, including protected activity. However, "this exact argument has been heard and rejected by at least five different federal judges."

*McHugh*, 583 F. Supp. 3d at 28 (citing *Mostofsky*, 579 F.Supp.3d at 22-23; *Nordean*, 579 F.Supp.3d at 57; *Howard*, 2021 WL 3856290, at \*11–12; *Phomma*, 2021 WL 4199961, at \*4–5; *Wood*, 2021 WL 3048448, at \*7–8, and adding, "[t]his Court joins them.").

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky*, 579 F.Supp.3d at 22.  The plain text supports this reading. *See Nordean*, 579 F.Supp.3d at 57.  An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as § 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

The defendant contends that § 231(a)(3) "would presumably authorize a felony conviction for a bystander who yells at police to desist from an arrest, one who flips off officers to distract or encourage resistance, or one who records police activity with a cellphone." ECF No. 55 at 17. The text of the statute contradicts this contention because it "shows that § 231(a)(3) covers primarily, if not exclusively, conduct or unprotected speech, such as threats." *Fischer*, 2022 WL 782413, at \*4 (internal quotation marks omitted).  Indeed, "civil disorder's 'fulsome statutory definition' makes plain that to constitute a 'civil disorder,' the "gathering" must 'involve acts of violence' and either cause or 'immediate[ly]' 'threaten bodily injury or property damage[,]'" and "[t]he definition, in other words, 'limits the application of civil disorder to a small (obviously unlawful) subset of public gatherings.'" *Id.* at \*3 (alterations in original) (quoting *McHugh*, 583 F. Supp. 3d at 27 n. 22).

**III.     DEFENDANT'S SEPARATION OF POWERS ARGUMENT IS MOOT.**

Lastly, the defendant argues this Court and other courts cannot interpret Section 231(a)(3) to be constitutional if it is unconstitutional on its face. ECF No. 55 at 18.  For the reasons set forth above, the statute is constitutional on its face. Therefore, the defendant's "separation of powers" argument is moot.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendant's motion to dismiss Count One of the Superseding Indictment should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s *Allison K. Ethen*
CHRISTOPHER D. AMORE
ALLISON K. ETHEN
Assistant United States Attorneys
Capitol Siege Detailees
N.Y. Bar No. 5032883
M.N. Bar No. 0395353
601 D Street, N.W.
Washington, D.C. 20579
973-645-2757
Christopher.Amore@usdoj.gov
Allison.Ethen@usdoj.gov