```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
    * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,          ) Criminal Action
                                   ) No. 21-563
vs.                                )
                                   ) March 22, 2023
VICTORIA C. WHITE,                 ) 11:14 a.m.
                Defendant.         ) Washington, D.C.
    * * * * * * * * * * * * * * *
```

                   **TRANSCRIPT OF PROCEEDINGS**
              **BEFORE THE HONORABLE JOHN D. BATES,**
             **UNITED STATES DISTRICT COURT SENIOR JUDGE**
                  ***(All parties appearing via teleconference.)***

**APPEARANCES:**

FOR THE UNITED STATES:

                  ALLISON KIM ETHEN
                  USAO
                  300 South 4th Street
                  Minneapolis, MN 55415
                  (612) 664-5575
                  Email: allison.ethen@usdoj.gov

                  CHRISTOPHER AMORE
                  DOJ-USAO
                  District of New Jersey
                  970 Broad Street
                  Newark, NJ 07102
                  (973) 645-2757
                  Email: christopher.amore@usdoj.gov

FOR THE DEFENDANT:

                  EDWARD L. TARPLEY, JR.
                  819 Johnston Street
                  Alexandria, LA 71301
                  (318) 487-1460
                  Email: edwardtarpley@att.net

                  NICOLE ANN CUBBAGE
                  712 H. Street NE
                  Washington, DC 20002
                  (703) 209-4546
                  Email: cubbagelaw@gmail.com

Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                  Official Court Reporter

           Proceedings reported by machine shorthand.
       Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

THE COURTROOM DEPUTY:  Your Honor, we have Criminal Case No. 21-563, the United States of America v Victoria Charity White.

May I get counsel for the government to please identify themselves for the record.

MS. ETHEN:  Good morning, Your Honor. Allison Ethen on behalf of the United States.

MR. AMORE:  Good morning, Your Honor.

Christopher Amore, also on behalf of the United States.

THE COURTROOM DEPUTY:  May I get counsel for defendants, starting with local counsel, to identify themselves for the record?

MS. CUBBAGE:  Good morning, Your Honor. Nicole Cubbage for Ms. White.

MR. TARPLEY:  Good morning, Your Honor. Edward L. Tarpley, Junior, on behalf of Ms. Victoria White.

THE COURTROOM DEPUTY:  May I get the defendant herself to at least state her name for the record and verify that she is able to both see and hear the judge and the attorneys.

THE DEFENDANT:  Victoria White.  And I can hear and see the judge and attorneys.

THE COURT:  She's assuming she can hear me but,

1    now that I speak, I think she can confirm that she can hear

2    me.  I think the first thing that we need to do is address

3    Ms. White's counsel situation.

4            Mr. Tarpley has entered an appearance on her

5    behalf, and he is your voice as retained counsel at this

6    time.

7            Is that correct, Ms. White?

8            THE DEFENDANT:  Correct.  Correct.

9            THE COURT:  Ms. Cubbage, I believe that that means

10   that at this point I can release you.

11           Is there any reason from your perspective or,

12   Mr. Tarpley, from your perspective, that I should not now

13   release Ms. Cubbage as counsel in this case?

14           MS. CUBBAGE:  I wish to be released.  I filed my

15   motion to withdraw, and I don't see any hindrance for that

16   to be granted at this time.

17           THE COURT:  Mr. Tarpley, any reason not to grant

18   that motion to release Ms. Cubbage?

19           MR. TARPLEY:  Absolutely not, Your Honor.

20           I have spoken to Ms. White and I have spoken to

21   Ms. Cubbage.  There is no reason for Ms. Cubbage's motion

22   not to be granted.

23           THE COURT:  I will grant that motion, and I will

24   do so with gratitude to Ms. Cubbage who first came into this

25   case, I believe, when I required Ms. White to have limited

1    standby counsel for purposes of access to certain discovery.

2    And she then, with Ms. White's agreement and request,

3    assumed more complete a role as counsel, but that is now

4    terminated.

5           Ms. Cubbage, thank you, again.  You are released,

6    and you can leave this proceeding.  Although, it is a public

7    proceeding, so if you want to stay you could.

8           MS. CUBBAGE:  I will stay, Your Honor, because

9    there are some recent discovery issues; and I may need to

10   opine on -- to those reasons why we're getting some late

11   discovery at this point, and that may impact some decisions

12   that happen in this hearing.

13          THE COURT:  All right.  Well, we're happy to have

14   you remain on at this time.

15          So we have a May 8th trial date.  But I need to

16   hear from Mr. Tarpley, to begin with, as to whether that is

17   a date that we should be looking to hold trial on or whether

18   there is going to be a request now for a change of that

19   date.  And we have other related dates that are in place

20   with respect to pretrial motions, some of which we have

21   received -- at least some of which; I think there are three

22   pending motions.  But the schedule was to have those briefed

23   by the end of March.  That does not look like it is

24   happening.

25          Then there is a motion in limine scheduled that --

1    I have those motions due the first week in April.  And then

2    we also have questions, potentially, with respect to experts

3    that we may need to address.

4            Mr. Tarpley, let me start with you on what your

5    request is with respect to our trial schedule.

6            MR. TARPLEY:  Yes, Your Honor.

7            I think we certainly need to delay the May trial

8    date.  We are going to need a few months to get up to speed

9    on the case, Your Honor.  There is a significant amount of

10   discovery which we have to review.

11           Also, I have been advised by Ms. Cubbage that the

12   government is still providing discovery in this case.  In

13   fact, discovery was provided to the defense as late as, I

14   think, yesterday or the day before yesterday.  And that --

15   obviously, these are matters we need to review; they're

16   significant; they are important in terms of Ms. White's

17   defense.  And so, Your Honor, I think that we certainly will

18   need to move the May trial date.

19           I think, obviously, I will need time to review the

20   discovery and review the case and the materials that have

21   already been provided.  But we do have this new discovery

22   that just has been turned over which, obviously, is going to

23   have to be looked at.

24           And in addition to that, Your Honor, there is an

25   ongoing request by the defense to the government that the

1    government identify certain officers that were in the

2    tunnel; and so that matter has not been resolved, and we are

3    still waiting for that.

4         Ms. Cubbage and I have had lengthy discussions

5    about that, and I understand the government is still in the

6    process of trying to obtain that information.

7         For all of those reasons, Your Honor, I would

8    respectfully request that the judge set a new trial date

9    months in the future which would give us a chance to do what

10   we need to do to adequately prepare and defend Ms. White.

11        THE COURT:  Mr. Tarpley, give me a target.

12        We won't set the date until I hear from everybody.

13   But give me a target of what you are talking about when you

14   say -- I think the two terms you have used have been a "few

15   months" and "months in the future."

16        From your perspective, what are you talking about?

17        MR. TARPLEY:  I would suggest to the Court

18   something in the September, October time frame.

19        THE COURT:  With that in mind, let me turn to the

20   government to ask one or two questions.

21        First, with respect to discovery, is it, in fact,

22   true that specific discovery relating to Ms. White and the

23   charges against her is being provided over the last couple

24   of weeks?

25        MR. AMORE:  Your Honor, we did make a supplemental

1     production over the past week.  But I just want to clarify,

2     this is -- none of this is evidence of conduct that occurred

3     on January 6th.  This is all information that was collected

4     over the past few months, maybe as far back as the fall of

5     2022.  The earliest piece was the Facebook posting by

6     Ms. White herself.

7            Additionally, there was information to be

8     collected when Ms. White was recently arrested in Minnesota

9     for a separate charge.  So none of this new discovery is

10     information that pertains to the crime that she has been

11     charged with on January 6th.  It's -- again, it's all

12     information that's occurred over the past few months that's

13     collected by the FBI for the purposes of just adding it into

14     the file because they do include statements made by

15     Ms. White, including a news article that -- resulting from

16     interviews she's given to the press over the past couple of

17     months.

18            So I just want -- yes, the government has produced

19     recent discovery; but I just want the record to be clear

20     about what this discovery is.

21            And I could also address, if Your Honor wants, the

22     recent request to identify officers, if Your Honor would

23     like.

24            THE COURT:  Let me address two things.

25            I think in the past there has been some discussion

1    about -- or at least Ms. White may have claimed this in some

2    of her public statements, that there is video coverage of

3    the interface between Ms. White and police officers in and

4    around the tunnel that has not been turned over.

5              MR. AMORE:  So, Your Honor, I believe she made the

6    statement on the record that there was exculpatory evidence

7    consisting of BWC video.

8              All of Ms. White's prior attorneys, including

9    Ms. Cubbage and the two or three attorneys before her, have

10   been provided full access to all of the body-worn camera

11   footage that was produced in the global discovery.

12             As part of our discovery that was specific to

13   Ms. White's case, we provided a few BWC video clips that

14   we -- in which we identified her appearing in.  But at the

15   time we didn't -- the clips I believe that Ms. Cubbage and

16   Ms. White are referring to, the government had not seen

17   those clips, but they were certainly in the discovery that

18   was provided to all defense counsel.

19             And just with respect to defense's request to

20   identify officers -- I have conveyed this to Ms. Cubbage; I

21   have not had a chance to talk to new counsel yet -- but the

22   government is going to endeavor, and we are endeavoring in a

23   good faith effort, to identify those officers.  But by no

24   means do we think we are obligated to do what Ms. Cubbage

25   has asked us to do, which is to take all of the videos that

1    they have been provided and try to figure out who the

2    officers are that are witnesses in this case.

3           They have -- defense counsel has, in the global

4    discovery, all of the camera numbers, all of the names of

5    the officers associated with those camera numbers.  And

6    defense counsel, as they have been doing this in other

7    cases, can do this work themselves.

8           But as a good-faith effort -- in good faith, the

9    government has offered to attempt to do this ourselves.

10   But, as you can imagine, it's a difficult task, and we're

11   still working on that, Your Honor.

12           But the government strongly rejects the idea that

13   there is exculpatory evidence that we have not turned over.

14   All of the BWC videos collected on January 6th have been

15   provided to all defense counsel, certainly all of

16   Ms. White's prior defense counsel.  So they have it, they

17   can look at it, and they can determine for themselves which

18   ones they think -- put up their best defense at trial.

19           Thanks, Judge.

20           MS. CUBBAGE:  Your Honor, if I might be heard just

21   briefly on this.

22           THE COURT:  Go ahead, Ms. Cubbage.

23           MS. CUBBAGE:  So when I first made the request in

24   February, after our last hearing, I wanted the government to

25   identify all of the officers in the tunnel.  I was told:

1     You have that, go find it.  You have an index of all of

2     these camera numbers and all of these body-worn cameras, and

3     a chart where you can kind of triangulate where people were.

4          I did exactly that.  I did my work.  I went, I

5     pulled the chart; I looked at all of the reference numbers.

6          What you get in that chart is a zone.  The zone is

7     Zone A, Zone B, Zone C, and it will list a list of numbers

8     where someone's camera was within a zone.  That doesn't tell

9     you that that person was in the tunnel, that doesn't tell

10    you if that person was up on the upper deck in that zone.

11         So it's, essentially, a roadmap that leads you

12    nowhere, and the government knows exactly who those officers

13    are.  They have interviewed them.  They have interviewed the

14    officers who identified who they were in the tunnel with.

15         Reading the 302 of the officers we have been

16    provided, I can kind of figure out if somebody mentions

17    another guy in the tunnel; but there is really no way to use

18    this index to do what Mr. Amore says is our job.

19         So I, in representing Ms. White, sent screenshot

20    photos, circled the officers, and said, Please identify who

21    these officers are.  They said it was too much.  I narrowed

22    it down to the ones that were closest to Ms. White whose

23    body-worn camera would be able to capture her in the tunnel;

24    I don't think that's an outrageous request.  And I think it

25    is, at a bare minimum, relevant evidence to Ms. White's

1  defense.

2          And quite frankly, we have been getting body-worn

3  camera sent to us by press and media released in other cases

4  that show Victoria White.  So I am asking the government to

5  do their job -- that's not my job; anybody but

6  Mr. Tarpley's -- to do their job and identify relevant

7  witnesses for Ms. White to bring to trial.

8          THE COURT:  All right.  I can't resolve anything

9  right now.

10          Mr. Tarpley, this will be up to you, to have

11  conversations with Mr. Amore and Ms. Ethen, and the proper

12  representatives of the government who I think they are, and

13  see if things can be worked out, in terms of any issues with

14  respect to the identification of officers or any additional

15  video of any kind that the defense has a good faith belief

16  has not been turned over.

17          So have those discussions, and then bring to me

18  whatever either side needs -- believes I need to resolve.

19  There is no other way to do it.  I can't resolve it just by

20  the conversation that is taking place right now.

21          But it seems to me that, Mr. Tarpley, that will be

22  something that you will have to engage with the government

23  on and, only if necessary, bring it to me; but I am ready

24  and available if it needs to be resolved by me.

25          Is there anything more that I need to hear from

 1      any of the attorneys on this issue?

 2              Ms. White, I know that you are being very

 3      demonstrative in your reactions to this, in terms of shaking

 4      your head and indicating yes or no.  I will tolerate that

 5      for now but, believe me, when we're in the courtroom that is

 6      not something that you will be doing while anyone is

 7      commenting or testifying.  You might start to restrain

 8      yourself now in anticipation of the restraint that you will

 9      have to exercise in another setting.

10              All right.  So anything more that anyone thinks

11      they need to say on those potential, at least, issues; they

12      are not issues before me yet.  I understand things may have

13      to be resolved.  If you bring them to my attention through

14      motions, and so forth, I will deal with them.

15              MR. TARPLEY:  Your Honor --

16              MR. AMORE:  I'm sorry, Your Honor.

17              I will just add -- I want to make clear that the

18      government is not refusing Ms. Cubbage's request.  We are

19      endeavoring to respond to that request but it is taking some

20      time.  And as Your Honor suggests, I will follow up with

21      Mr. Tarpley on the progress of that response.

22              MR. TARPLEY:  Yes, Your Honor.

23              THE COURT:  Mr. Tarpley.

24              MR. TARPLEY:  Yes.  I just want to concur

25      everything Mr. Amore said, that we will certainly be

1    speaking with him and communicating with him and Ms. Ethen

2    about this.

3              I do concur and agree with all that Ms. Cubbage

4    has said, and I look forward to working with government

5    counsel as we work through this.  And we will be in

6    communication and seek to try to get this matter resolved.

7              THE COURT:  All right.  We need to set a couple of

8    dates.

9              The dates that we should be looking at are, I

10   think, for trial.  A date for a schedule for motions are

11   sort of half underway and then a schedule, as well -- those

12   are pretrial motions, and then a schedule for in limine

13   motions back to the trial date.

14             MR. AMORE:  Your Honor --

15             THE COURT:  With respect -- yes, go ahead.

16             MR. AMORE:  I am sorry to interrupt.

17             Before you get to that -- and maybe you were

18   getting to this, whether or not new defense counsel will be

19   relying on the motions already filed by Ms. Cubbage or if

20   defense counsel will be filing new pretrial motions?

21             THE COURT:  That's what we're going to be talking

22   about in terms of the schedule.

23             MR. AMORE:  Yes, Your Honor.

24             THE COURT:  So why don't we do that, and talk

25   about pretrial motions, status, and schedule, Mr. Tarpley.

 1          MR. TARPLEY:  Yes.  I would say to the Court at

 2     this point that I would adopt and agree with the motions

 3     that have been filed by Ms. Cubbage.  I understand she has

 4     two motions to dismiss and a motion for change of venue.

 5          I have reviewed all of her motions; I agree with

 6     her motions.  And I don't see anything that I would need to

 7     change in any of those motions at this time.  It may be that

 8     I might would like to supplement those motions at some point

 9     but, as of today, I would simply convey to the Court my

10     agreement with the motions, and I adopt those motions as my

11     own and prepare to go forward with them.

12          THE COURT:  All right.  Do you anticipate any

13     additional motions, pretrial motions?

14          MR. TARPLEY:  Your Honor, that is under

15     consideration.  I haven't made a final decision on that,

16     Your Honor.  There are still some matters that I need to

17     review.

18          Ms. Cubbage has sent me, by FedEx today, some file

19     materials that I would like to look at in order to make a

20     decision about any other pretrial motions.  But I think the

21     ones that she has filed are significant motions, and I will

22     make a determination without delay as to whether or not

23     there are any additional motions that need to be filed.

24          THE COURT:  All right.  Here is, I guess, what

25     we're going to do then.  We'll set a four-date schedule.

1              The first date will be the government's responses

2      to the existing motions; the second date will be a

3      defendant's reply on those existing motions and any new

4      motions; the third date will be the government's opposition

5      to any new motions.  And if there is anything new, in terms

6      of supplementation provided in the defense's reply to the

7      existing motions, I will allow the government to file a

8      surreply.  And the last date will be the defendant's reply

9      on its new motions.  Those are the four dates we're looking

10     for.

11             The first date is the government's opposition on

12     the existing motions.  When can that be in, Mr. Amore?

13             MR. AMORE:  Your Honor, if we can have -- I am

14     just looking.  I am in trial in the middle of April.  If we

15     can have four to six weeks to respond?

16             THE COURT:  That's going to stretch things out a

17     lot.

18             MR. AMORE:  30 days, Your Honor?

19             THE COURT:  You were due to respond to those

20     already, I believe.

21             MR. AMORE:  Correct, Your Honor.

22             Can we have 30 days?

23             THE COURT:  All right.  Give me the date in

24     30 days.  That would be --

25             MR. AMORE:  April 24th.

```
 1                THE COURT:  April 24th is more than 30 days.

 2                MR. AMORE:  April 21st, it's a Friday.

 3                THE COURT:  April -- I don't know what the days of

 4      the week are.

 5                MR. AMORE:  Your Honor, Friday, April 21st.

 6                THE COURT:  The 21st is Friday?  Okay.

 7                And then what date for any replies, Mr. Tarpley?

 8      And that would include any new supplementation.  You are not

 9      going to be able to supplement at a later date.  You are

10      going to have to be ready to supplement there on the

11      existing motions and file any additional motions.

12                MR. TARPLEY:  Yes, Your Honor.

13                How about May 19th, Your Honor?

14                THE COURT:  That will be fine.  That's only fair

15      given the time that I have given the government.

16                And then the government, which would be opposing

17      any additional motions if there is a basis for it, filing

18      any response with respect to new material on the existing

19      motions in the defense's reply?

20                MR. AMORE:  How about June 9th, Your Honor?

21                THE COURT:  June 9th.

22                MR. AMORE:  Three-weeks.

23                THE COURT:  I would agree with that.

24                And then the last date -- maybe a week later to

25      file any reply, Mr. Tarpley?
```

| | |
|---|---|
| 1 | MR. TARPLEY:  Let's see, Your Honor.  June 9th? |
| 2 | How about June 23rd, Your Honor? |
| 3 | THE COURT:  All right.  I will give you two weeks. |
| 4 | We will have all of those motions briefed but not |
| 5 | until June 23rd.  So that's our schedule. |
| 6 | MR. TARPLEY:  Yes, sir. |
| 7 | THE COURT:  Let's now move to the question of a |
| 8 | trial date. |
| 9 | Mr. Tarpley has suggested September or October. |
| 10 | What is your reaction to that, Mr. Amore? |
| 11 | MR. AMORE:  Judge, I don't certainly want defense |
| 12 | to be hindered in its time to prepare.  I think that's a lot |
| 13 | of time.  I think the government can certainly be ready a |
| 14 | month or two prior to that, but I don't have an objection to |
| 15 | what he is requesting. |
| 16 | THE COURT:  Well, two months prior to that would |
| 17 | be July and we have got a motion schedule that stretches |
| 18 | through the end of June so I am not scheduling trial in |
| 19 | July.  It's very hard to have a trial in August these days |
| 20 | given witness availability and counsel availability.  I |
| 21 | think that that is going to force us into the September time |
| 22 | frame. |
| 23 | I should have looked this up.  I have at least one |
| 24 | conflict in September, just a day-and-a-half conflict.  I |
| 25 | don't know whether it's in the week of September 11th or the |

1    week of September 18th.  Then I have a trial, I believe,

2    that begins September 25th; I think I just set that and it's

3    not on the calendar yet.

4            Maybe one of my law clerks could refresh me if, in

5    fact, it's true?  I think we just set a trial on

6    September 25th, with a case we had earlier this week.

7            MR. AMORE:  Judge, I have a trial before Judge

8    Friedman.

9            THE COURT:  Just a second, Mr. Amore, please.

10           THE COURTROOM DEPUTY:  Your Honor, that would be

11   the Sidorski matter, September 25th, with a pretrial

12   conference on September 6th.

13           THE COURT:  Yes, that was just set yesterday.

14           Mr. Amore, what do you have to say?

15           MR. AMORE:  Your Honor, I was just going to say

16   that I have a bench trial before Judge Friedman on

17   September 26th.

18           THE COURT:  All right.  Well, that week is out

19   anyway.

20           So I can try to do it earlier in September, and it

21   would be either -- first of all, I need to ask a question.

22   This may be a little -- a difficult a question.

23           Mr. Amore, how long do you think the government's

24   case will take?

25           MR. AMORE:  Your Honor, we have been estimating

1    two days for the government's case.

2          THE COURT:  And nothing has changed in terms of

3    that estimate?

4          MR. AMORE:  No, Your Honor.  Up until this point

5    nothing has changed.  I think the last time I said two or

6    three days; and I stand by that, Your Honor.

7          THE COURT:  Mr. Tarpley, to the extent that you

8    are able to speak to it at this early juncture, any sense of

9    the length of time the defense case might take?

10          MR. TARPLEY:  I am going to say two days at this

11    time, Your Honor.

12          THE COURT:  That's quite a long time for an

13    individual defense case in a January 6th trial.  Perhaps I

14    can contemplate how that could happen depending upon what

15    the evidence might be.

16          I will be blunt about it.  I mean, Ms. White has

17    said probably -- that she believes that she was treated too

18    roughly by police.  I take it that it's in the tunnel, which

19    is the same location as the government would be presenting

20    evidence on with respect to the charges against Ms. White.

21    If so, I can see how there might be some evidence the

22    defense would be putting on with respect to the events and

23    what took place in the tunnel.

24          I take it -- Ms. Cubbage, you may have to speak to

25    this if you are still here.  I take it that this is not

1    going to be some separate interface with law enforcement on

2    January 6th that is not the subject of any of the charges

3    against Ms. White; is that correct?

4             MS. CUBBAGE:  That's correct, Your Honor.

5             I would say that it's all a related event.  And

6    the allegations against Ms. White involve her being

7    disorderly and behaving in a certain way in that tunnel.

8    And it's our belief that the body-worn camera shows the

9    officers were the aggressors and that she never caused any

10   of the behavior herself but that it was caused by the police

11   officers beating up on her -- one in particular.

12            THE COURT:  Mr. Tarpley, I take it that it's

13   possible that, as Ms. Cubbage has indicated, you may desire

14   to produce an expert with respect to use of force?

15            MR. TARPLEY:  That is correct, Your Honor.  Yes,

16   that is absolutely correct.

17            THE COURT:  Before we set a trial date, let's set

18   that date.  We need a date by which either side will fulfill

19   its obligation under Rule 16 with respect to the

20   identification of experts to be used.

21            I take it the government has been informed of the

22   expert; is that correct?

23            MR. AMORE:  Yes, Your Honor.

24            Ms. Cubbage filed notice -- provided us with

25   notice, correct.

1          THE COURT:  And is the government intending to

2     also call an expert?

3          MR. AMORE:  Your Honor, the government intends to

4     oppose -- and I was envisioning doing it in motions

5     in limine -- opposing the defendant's use of an expert.

6     Depending on how that motion went, then the government would

7     have to decide whether or not it would be calling a rebuttal

8     expert.

9          THE COURT:  That's going to jam it, pretty much.

10          Motions in limine probably will not be resolved

11     until very shortly before trial.  And if at that point I

12     allow the defense expert and the government only then

13     identifies an expert to the defense it might be a little

14     late in the game.

15          MR. AMORE:  Well, it would be as a rebuttal

16     expert, Your Honor.  So we wouldn't know until we know

17     exactly what it is the defense expert plans on opining on.

18          THE COURT:  Okay.  You don't think you will know

19     that until you smoke it out in a motion in limine?

20          MR. AMORE:  Your Honor, without getting too much

21     into the argument now, the government will likely oppose the

22     defense use of an expert on relevance grounds.  And

23     depending on how the Court -- again, depending on how the

24     Court rules on that.  So if Your Honor is suggesting that

25     the government should at this time seek out an expert, I

 1      could certainly go back to my office and see if that's how

 2      we want to proceed, but that's not my understanding how we

 3      would proceed in this.

 4              We would not intend on using an expert in our case

 5      in chief if it would simply be to rebut the defense's use of

 6      an expert.

 7              THE COURT:  All right.  You need to fulfill your

 8      obligations under Rule 16.  Make sure you consider that.

 9              MR. AMORE:  Understood, Your Honor.

10              THE COURT:  And with respect to the timing for

11      resolution of the expert question, I am not inclined to

12      leave it for a motion in limine schedule that would be very

13      close to the trial date.  I would rather get it resolved

14      earlier because I think it's in everyone's interest to do

15      so.  We're going to set a separate schedule for that.

16              What more do you need to have happen, Mr. Amore,

17      before you can file your -- I will just use your

18      terminology -- your opposition to the defense expert?

19              MR. AMORE:  Your Honor, I believe we can file --

20      we can start preparing that now based on what has been

21      noticed by Ms. Cubbage.  If you want to build that into the

22      current motion schedule, that would be fine.

23              THE COURT:  All right.  Let's build that into the

24      current motion schedule.

25              Right now you have an obligation to file

1    oppositions on April 21st.  Is that too soon for you to file

2    something opposing the defense use of an expert?

3              MR. AMORE:  Your Honor, the government would ask

4    that we be allowed to file it at the same time -- on the

5    same date you have given defense counsel to file any new

6    motions, which would be May 19th.

7              THE COURT:  All right.  That sounds fine to me.

8    So the government will file anything it wants to file on an

9    expert on May 19th.  That means that the defense will have

10   to post or file anything in opposition on the 9th and the

11   government can file any reply on the 23rd, so that that will

12   be fully briefed and ready for resolution at the same time

13   the other pretrial motions are.  That will be far enough in

14   advance of a trial date so that neither side is prejudiced

15   with respect to the evidence and experts that might be used

16   and the obligations that you have under Rule 16 to identify

17   experts.

18              Okay.  Trial date.  Back to the trial date.

19              I need to find out whether the judicial conference

20   of the United States is on Tuesday, September 12th -- I

21   believe that would be the day -- or Tuesday, September 19th.

22   I am asking one of my law clerks to do a little quick

23   research on that to see whether I am available because I am

24   obligated to attend that.  It isn't on my calendar right

25   now.  Bear with me for a moment.

1          (Whereupon, the Court and staff confer.)

2          THE COURT:  The motions in limine -- what I am

3    looking at is a trial date of either the 11th of September

4    or the 18th of September.  I know that you have a bench

5    trial the 26th, Mr. Amore.

6          Are you able to do this trial if we schedule it on

7    the 18th?

8          MR. AMORE:  Yes, Judge.

9          THE COURT:  I could schedule it -- if the date

10   that I am unavailable is the 12th, I could schedule it to

11   begin on Thursday, the 14th, which would give you a little

12   more breathing room.

13         MR. AMORE:  It would, Your Honor.  Actually, there

14   is a motions hearing on that trial on September 11th.  I

15   will be down in person for that.  If I could have a few days

16   after that before we start the next --

17         THE COURT:  Mr. Tarpley, what is your availability

18   during the month of September?

19         MR. TARPLEY:  The 14th would be a good day to --

20   date to start, Your Honor.

21         THE COURT:  Let's hope we can.

22         MR. TARPLEY:  If we can pick the jury the 14th and

23   the 15th, I will be ready to go on Monday, the 18th.

24         THE COURT:  I don't think it will take us two days

25   to pick a jury.

1          MR. TARPLEY:  That's great.  One day then will be

2     perfect.

3          THE COURT:  It has extended beyond one day on one

4     occasion.  I hope not to do so on any future occasions but,

5     if so, it only extends into the next morning.  And I would

6     expect that we would be able to begin proceedings in the

7     trial on that second day, even if not at 9:30 on that second

8     day.

9          Let me see what I can confirm here.

10          It is on the 12th.  We can begin trial on the

11     14th, that will be our trial date.  Thursday, September 14th

12     we are expecting a one-week trial, and that includes jury

13     selection as well as opening statements and closing

14     arguments.

15          MR. AMORE:  Judge, I'm sorry if I missed it.

16          Does the Court not have availability the week of

17     September 4th?  I think that's Labor Day, but following

18     after that, September --

19          THE COURT:  The problem is that is a short week,

20     and then I have obligations with respect to the judicial

21     conference both on the 11th and --

22          MR. AMORE:  I understand, Your Honor.

23          THE COURT:  I am afraid that's too short a week

24     for us to fit it in.

25          So we have a trial date of September 14th.  We now

1    need a -- I think I am going to schedule another status with

2    you-all because I don't want to sail at sea for that long.

3            We will have to have a pretrial conference

4    obviously sometime either as late as September 5th, maybe

5    September 1st.  I am more inclined to say September 5th or

6    sometime in August.

7            Can you do it on September 5th?

8            MR. AMORE:  Judge, will that be in person or by

9    Zoom?

10            THE COURT:  Let's see if we have availability, and

11    then we'll decide which way to do it.  I prefer to do it in

12    person, but I don't think I am required to under the Federal

13    Rules of Criminal Procedure, et cetera.

14            MR. AMORE:  I would be available September 5th,

15    Your Honor.

16            THE COURT:  Mr. Tarpley?

17            MR. TARPLEY:  I would be available September 5th,

18    Your Honor.

19            THE COURT:  All right.  And is there a preference

20    for in-person or by Zoom?

21            MR. AMORE:  I can make either work, Your Honor.

22            MR. TARPLEY:  It's the day after the Labor Day

23    weekend, Your Honor.  And so the problem with that is it's a

24    little more difficult flying right near a national holiday

25    like that; so that could be a bit of a problem.  I don't

1    have an objection -- go ahead, sir.

2              THE COURT:  Would you be comfortable doing it by

3    Zoom?

4              MR. TARPLEY:  I would be comfortable doing it.

5    This Zoom hearing today is going pretty well.

6              THE COURT:  Ms. White, I know, is comfortable with

7    Zoom proceedings so she doesn't have to fly back and forth

8    to Washington.  I think I would be comfortable in this case

9    doing it by Zoom unless developments occur that convince me

10   otherwise.

11             We'll go ahead and schedule the pretrial

12   conference to accommodate the traveling.  Maybe we should

13   have it first thing in the afternoon in case you need to

14   have a morning flight on the 5th.

15             MR. TARPLEY:  The afternoon would be fine, Your

16   Honor.

17             THE COURT:  2 o'clock?

18             MR. TARPLEY:  Yes, sir.

19             THE COURT:  All right.  2:00 p.m. on September 5th

20   is our pretrial conference.  Then we need a motions in

21   limine schedule.

22             We might as well do all of the scheduling now.

23             First of all, voir dire questions and jury

24   instructions.  I would like them in before the pretrial

25   conference.  I won't necessarily be finalizing them by then,

1    but I would like to have looked at them so I know if there

2    are substantial disagreements.

3              So can we have them in maybe August 29th?

4              MR. TARPLEY:  That's fine, Your Honor.

5              MR. AMORE:  That's fine.

6              THE COURT:  And a motions in limine schedule.

7    Give me an opportunity to resolve them on or before

8    September 5th.  I think we need to have motions in limine

9    filed, and the expert issue will not be part of this.  We

10   will need to have them filed maybe by August 4th, with any

11   oppositions by August 18th, and any replies by August 25th.

12             How does that sound?

13             MR. TARPLEY:  That sounds great.

14             THE COURT:  August 4th, August 18th, and

15   August 25th.

16             All right.  We have everything scheduled.  The

17   only thing we haven't considered is whether we need to have

18   a get-together before then in the form of a status.

19             We have got pretty full scheduling calendars, but

20   we won't be seeing each other again until September 5th.  I

21   don't think the pending motions will require any testimony

22   and may not require a hearing -- probably don't require a

23   hearing in my view.  But is there a possibility of any

24   motion that could require, number one, any testimony?

25             Are there any statements that are likely to be at

1    issue here?  Anything that could require a motion to

2    suppress?

3              MR. TARPLEY:  I don't think so, Your Honor.

4              Again, I haven't had a chance to look at all of

5    the material, obviously.  But at this stage of the game, for

6    me, I would say no, I don't think so at this point.

7              THE COURT:  All right.

8              MR. TARPLEY:  It may be prudent for the Court to

9    set a date for hearings if they were needed, and maybe that

10   would be a suggestion to the Court so we would know that we

11   had a date out there if, indeed, it was required.

12             THE COURT:  That's what I was going to do.  I was

13   going to set a date for us to get together again; it would

14   have to be in July.  Maybe something like July 19th?

15             How does that look for counsel?

16             MR. TARPLEY:  July 19th looks good for me, Your

17   Honor.

18             THE COURT:  Mr. Amore and Ms. Ethen?

19             MR. AMORE:  Again, Your Honor, I am assuming that

20   will be by Zoom, correct?

21             THE COURT:  I think that can be by Zoom, yes.

22             MR. AMORE:  We can make that work, Your Honor.

23             THE COURT:  Let's do it -- since it's by Zoom,

24   Mr. Tarpley, refresh me; where are you located, Louisiana?

25             MR. TARPLEY:  I am in Louisiana, sir.

1          THE COURT:  Is that a one- or a two-hour time

2     difference?

3          MR. TARPLEY:  A one-hour time difference, Your

4     Honor.

5          THE COURT:  All right.  Ms. White, is Minnesota a

6     one- or a two-hour difference?

7          One hour.  I read your lips because I don't think

8     you came across by audio there.

9          All right.  How about 11 o'clock on July 19?  11

10     o'clock Eastern time?

11          MR. AMORE:  That's fine, Your Honor.

12          THE COURTROOM DEPUTY:  Will that be a status

13     conference or a motions hearing?

14          THE COURT:  It's going to be both a status

15     conference and a motions hearing.  We'll do a motions

16     hearing if necessary.  But we will have that date anyway as

17     a status conference because I do want to see you again, not

18     wait until the week before trial to see you.

19          All right.  That's a lot of dates.  I will put

20     these out in order so there is no confusion on the schedule.

21     And the docket will reflect it as well; Mr. Haley will get

22     the docket updated.

23          With that all in place, I guess we have a speedy

24     trial issue we need to talk about.  But, other than that, is

25     there anything further that we can benefit from discussing

1    here today, Mr. Amore?

2              MR. AMORE:  Nothing from the government.

3              Thank you, Your Honor.

4              THE COURT:  Mr. Tarpley?

5              MR. TARPLEY:  Nothing from the defense.

6              But I did want to ask the Court:  On the July 19th

7    date, if we do have a motions hearing -- we're setting it up

8    as a Zoom hearing.  If I chose to be there regarding the

9    motions, that would be appropriate; would that be correct,

10   Your Honor?

11             THE COURT:  That would be appropriate but you need

12   to let us know that.  As you see, right now I am doing this

13   Zoom hearing from the courtroom.

14             There are occasions when I do Zoom hearings

15   without being in the courthouse.  So I need to know if you

16   are going to come because if someone is going to come in

17   person I would need to be here in the courtroom.

18             MR. TARPLEY:  Yes, Your Honor.  Thank you.

19   Thank you so much.  I don't know that that will happen, but

20   I just wanted to make sure that was an option.

21             THE COURT:  I appreciate your asking.

22             All right.  Then with respect to speedy trial, I

23   can't remember if we have speedy trial tolled just through

24   today, or what our date is.

25             MR. AMORE:  Your Honor, I believe it's tolled

1    through the prior trial date of May 8th.

2              THE COURT:  That's what I sort of suspected.

3              We're going to extend beyond that date.  We may

4    have motions -- well, we do have motions pending, and they

5    will be tolling things.

6              But I guess what I need to ask you, Mr. Tarpley --

7    since our necessity of rescheduling the trial to

8    September 14th is Ms. White's change of counsel, whether you

9    and Ms. White agree to exclude the time between now and the

10   newly scheduled trial date of September 14th for speedy

11   trial purposes?

12             MR. TARPLEY:  Yes, Your Honor.  We do agree to

13   that.

14             THE COURT:  All right.  With that agreement and

15   consent from the defendant and her counsel, and with the

16   agreement as well of the government I am confident, based on

17   all that we have discussed here today, in terms of

18   scheduling in this case and further tasks that need to be

19   done, I find that the interests of justice outweigh the

20   interests of both the defendant and the public in a speedy

21   trial and, therefore, the time between the May 8th trial

22   date and our newly scheduled trial date of September 14th

23   will be excluded for speedy trial computation purposes.

24   Indeed, that covers the time between now and the

25   September 14th trial date, and I so order.

1          With that, are we done for the day, Mr. Amore?

2          MR. AMORE:  Nothing else from the government, Your

3     Honor.  Thank you.

4          THE COURT:  Mr. Tarpley?

5          MR. TARPLEY:  Nothing else from the defense, Your

6     Honor.  Thank you, sir.

7          THE COURT:  All right.  Thank you, all.

8          Ms. Ethen, good to see you.

9          Ms. Cubbage, thank you for your help during this

10     proceeding.  You are, as I said earlier, released on

11     granting of your motion which I will get out today.

12          MS. CUBBAGE:  Thank you, Your Honor.

13          THE COURT:  Thank you, all.

14          (Whereupon, the proceeding concludes, 11:53 a.m.)

15                         *  *  *  *  *

16                         **CERTIFICATE**

17          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
      certify that the foregoing constitutes a true and accurate
18     transcript of my stenographic notes, and is a full, true,
      and complete transcript of the proceedings to the best of my
19     ability.
           This hearing was held via videoconference and/or
20     telephonically and is, therefore, subject to the limitations
      associated with audio difficulties while using technology,
21     i.e., static interference, audio feedback, etc.
           This certificate shall be considered null and void
22     if the transcript is disassembled and/or photocopied in any
      manner by any party without authorization of the signatory
23     below.

24     Dated this 10th day of May, 2023.

25     /s/ Elizabeth Saint-Loth, RPR, FCRR
      Official Court Reporter