# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Case No. 21-cr-563 (JDB)** |
| **v.** : | |
| : | |
| **VICTORIA CHARITY WHITE,** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' MOTIONS *IN LIMINE*

The United States respectfully submits this omnibus brief arguing motions *in limine* in advance of the trial in this case scheduled for September 14, 2023. Although neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence expressly contemplate motions *in limine*, the practice of allowing such motions has developed over time "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). "Motions in limine are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011).

The government offers the authorities and analysis below to promote efficiency and reduce the need to argue objections mid-trial. For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

1

## I. Motions *in Limine* to Admit Certain Statutes and Records

### A. Judicial Notice of the Federal Electoral College Certification Law

The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

The government requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15-18 relating to the Electoral College Certification Official Proceedings. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012). The government makes this request even though "no motion is required in order for the court to take judicial notice." *Moore v. Reno*, No. 00-5180, 2000 WL 1838862, at *1 (D.D.C. Nov. 14, 2000). Further, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 49 (1st Cir. 2004).

### B. Admission of the Congressional Record and S. Con. Res 1

The Congressional proceedings on January 6, 2021, were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *See MMA Consultants 1, Inc. v. Republic of Peru,* 245 F. Supp. 3d 486 (S.D.N.Y. 2017). The government intends to introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States." S. Con. Res. 1, 117th Cong. (2021). For the same reasons as the Senate Recording Studios footage above, these records should be admitted as self-authenticating.

## II.     Motions *in Limine* to Limit Unnecessary Discussion of Security-Related Topics

Certain topics that could arise at trial — namely the exact locations of USCP CCTV cameras and the protocols of the U.S. Secret Service (USSS) — have little to no probative value but would compromise significant security interests if needlessly disclosed to the public. The government does not intend to elicit any of the following topics in its case-in-chief and, therefore, cross-examination on such topics would be beyond the scope of direct and impermissible. Fed. R. Evid. 611(b). To the extent that the defendant seeks to argue that any of the following topics are relevant and within the scope of the government's examination, the government requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an

3

affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief). Preventing the defendants from exploring the topics identified above will not infringe their Confrontation Clause right because the exact positions of cameras, the camera map, and U.S. Secret Service protocols, implicate national security concerns, are of marginal probative value, and any probative value can be addressed without compromising the protective functions of government agencies.

### A. Exact Locations of USCP Cameras

The government seeks an order limiting the defense from probing, during cross-examination, the exact locations of Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial. The government produced such information to defendants in discovery pursuant to the Highly Sensitive designation of the Protective Order. *See* ECF No. 13. The defendant has been able to make use of such information in order to identify evidence and prepare for trial; however, none of the information serves to illuminate any fact of consequence that is before the jury.

This lack of relevance must be balanced against the national security implications at stake here. The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress, and therefore, national security. Furthermore, the government represents that the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the Capitol Police Board before they

4

may be released.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of Congress. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all Capitol Police cameras would risk compromising these security concerns for no additional probative value: the map contains numerous cameras installed in parts of the Capitol that the defendants did not visit.

Here, the video footage itself reveals the *general* location and angle of the camera's positioning. Additional details as to the precise location of the cameras are not relevant to the jury's fact-finding mission. Even assuming the evidence that the government seeks to exclude is marginally relevant, such relevance is substantially outweighed by the danger to national security. The Supreme Court has recognized that trial courts' balancing should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988). Accordingly, courts have properly balanced the sensitivity of national security-related information against the probative value of such information to the case, excluding the evidence where its relevance is slight. *See, e.g.*, *United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act). If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the general public and foreign adversaries. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the

determination of the truth, or the veracity or bias of witnesses. *Id.*

### B.  Secret Service Protocols

To meet its burden of proof at trial, the government will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. The witness will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, namely, protecting the Vice President and his family. The government further requests that such order preclude cross-examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021.  Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.  These topics have no relevance to any issue at controversy, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the government's legitimate interest in the safety of senior government officials.  *See* Fed. R. Evid. 403.

The government intends to offer the testimony that pursuant to authority under 18 U.S.C. § 3056(a)(1), on January 6, 2021, Secret Service agents were at the Capitol to protect Vice President

Mike Pence and two members of his immediate family. A Secret Service official is further expected to explain how the events at the Capitol on that date affected the Secret Service's ability to protect Vice President Pence and his family. This testimony will both explain—in part—the bases for enhanced security controls at the Capitol on January 6 as well as establish an element of the charge at Count Two, *i.e.*, that the civil disorder at the Capitol on January 6 interfered with a federally protected function.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial. Specifically, the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, evidence of the nature of Secret Service protective details is not relevant in this case. The disorder on January 6 interfered with the Secret Service's duties to protectees in this case insofar as they were required to take evasive action of the mob. The number or type of assigned agents on a protective detail is simply not relevant and could not alter the probability that there was interference with the Secret Service. None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.*[1]

---

[1] If the defense believes that it is necessary to present evidence or cross-examine witnesses about the exact locations of USCP cameras or USSS procedures, the government requests that the Court conduct a hearing *in camera* to resolve the issue. Courts have found that *in camera* proceedings are appropriate in circumstances where security concerns like these are present. *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of

### III. Motion *in Limine* to Preclude Defendant's Introduction of Her Own Out-of-Court Statements as Inadmissible Hearsay

A defendant's own out-of-court statements are hearsay that cannot be admitted to prove the truth of any matter asserted. Fed. R. Evid. 801, 802. The government can offer the defendant's statements as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A), or other non-hearsay or hearsay execution, but the defendant has no corresponding right to admit her own statements without subjecting herself to cross-examination.

#### A. The Rule of Completeness Cannot Circumvent the Rule Against Hearsay

Nor does Federal Rule of Evidence 106, the "Rule of Completeness," provide an end-run around the prohibition against hearsay. That rule provides that, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 directs the Court to "permit such *limited portions* [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence. *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986) (emphasis added). The rule does not "empower[] a court to admit *unrelated* hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (emphasis added). "The provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law

---

subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that *in camera* . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that *in camera* proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security"); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) (same). At any such hearing, the defendant should be required to make a specific proffer of some relevant purpose that is not substantially outweighed by the prejudice that disclosure would inflict on the government's security interests. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (explaining that a "proffer of great specificity" was necessary to support admission of testimony that could have proper or improper purposes).

requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context . . . In almost all cases we think Rule 106 will be invoked rarely and for a limited purpose." *Sutton*, 801 F.2d at 1369.

In this case, some of the defendant's statements to be offered by the government were made during lengthy interviews, or using social media accounts that were active over extended periods of time.  Rule 106 does not make all statements within these groups and accounts admissible over a hearsay objection, but only those narrow portions that are necessary to "correct a misleading impression." *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (quoting Advisory Committee note to Rule 106).  By way of analogy, Courts of Appeals have rejected the notion that "all documents contained in agglomerated files must be admitted into evidence merely because they happen to be physically stored in the same file." *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002), *as amended on denial of reh'g* (July 11, 2002) (quoting *United States v. Boylan*, 898 F.2d 230, 257 (1st Cir.1990)).  Accordingly, at trial the Court should reject any effort by the defendants to use the Rule of Completeness as a backdoor to admit otherwise inadmissible hearsay.

## IV. Motion *in Limine* to Preclude Improper Defense Arguments

### A. First Amendment

The United States moves this Court to admit in its case-in-chief statements that evince the defendant's motive or intent, or which go to prove an element of any offense with which she is charged.  The government also moves *in limine* to preclude the defense from eliciting evidence or arguing to the jury that her statements and actions were protected by the First Amendment.

#### 1. Admission of Defendant's Statements Does Not Violate the First Amendment

The government intends to introduce several statements, made by the defendant, that will aid the jury's determination as to whether the government has met the elements to show intent.  *See Mitchell*, 508 U.S. at 489 (the First Amendment "does not prohibit the evidentiary use of speech to

9

establish the elements of a crime or to prove motive or intent"). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.* Accordingly, the government asks that the Court rule that the First Amendment does not bar admission at trial of any statement that the government offers to establish the defendant's intent or an element of the crime.

Courts across the country, including this Court's colleagues in January 6th cases, have allowed evidence of defendant's statements for the purposes sanctioned by *Mitchell*. As Judge Cooper ruled:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. . . . If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted). Outside of the context of January 6th, *Mitchell* has been cited to uphold the admission of a wide range of statements, including but not limited to rap lyrics, terrorist materials, and speeches advocating civil disobedience. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) ("This challenge is meritless, however, because here the speech is not 'itself the proscribed conduct.' The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise.") (internal citation omitted) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (the defendants were not "prosecuted for possessing or reading terrorist materials. The materials seized . . . were used appropriately to prove the existence of the bombing conspiracy and its motive"); *United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009) (speeches advocating civil disobedience).

The defendant's statements that shed light on the elements of the offenses, or motive or intent, should be admitted in this case as expressly permitted by *Mitchell*, regardless of whether any of those statements may otherwise constitute speech protected by the First Amendment.

**2. Defendant Should be Precluded from Raising a First Amendment Defense to the Jury**

The government also moves *in limine* to preclude the defendant from arguing to the jury that her conduct was protected by the First Amendment. None of the offenses with which the defendant is charged punish speech, as crimes such as threats or solicitation do. "No matter [the rioter's] political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment." *United States v. Nordean*, 579 F. Supp. 3d 28, 53 (D.D.C. 2021).

If the government establishes the elements of any of the offenses with which the defendant is charged, the First Amendment provides them no defense, even if evidence of the defendant's crimes is intertwined with political discussion and/or rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"); *see also United States v. Hassan*, 742 F.3d 104, 127-28 (4th Cir. 2014) (citing *Amawi*).

Accordingly, any line of cross-examination or argument that the defendant may wish to make regarding the First Amendment is irrelevant under Fed. R. Evid. 401 because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and because she is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to the defendant's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether the defendant's

statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and unfairly prejudicing the jury.

### B. Charging Decisions and Selective Prosecution

The United States moves *in limine* to exclude all evidence and arguments regarding its charging decisions. The Supreme Court has recognized that the "Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 596, 607 (1985)). "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *Armstrong*, 517 U.S. at 464 (citing U.S. Const. Art. II, § 3); *see* 28 U.S.C. §§ 516, 547. As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also United States v. Batchelder*, 442 U.S. 114, 124-25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").

The defendant should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States. To the extent that the defendant seeks to present evidence or arguments that other individuals have not been charged for related conduct and/or that it is unfair that she has been charged, while other individuals involved in related criminal conduct remain uncharged or charged with lesser offenses, such evidence is irrelevant, inadmissible, and only serves to divert the jury's attention to matters unrelated to rendering a fair and just verdict.

### C. Self Defense or Defense of Others

The defendant has not formally raised a claim of self- or defense-of-others, however during the course of the investigation and litigation she has previously made statements which give the

12

government reason to believe she may seek to raise this type of defense. If she does, such arguments and evidence should be precluded. There is no reasonable argument that self-defense or defense-of-others are valid excuses for the offenses with which she is indicted under 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a), 40 U.S.C. § 5104(e).

To establish a prima facie case of self-defense, a defendant must make an offer of proof establishing "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006). "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." *United States v. Cramer*, 532 F. App'x 789, 791 (9th Cir. 2013) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)). Moreover, a defendant has the initial burden of production to raise this type of claim. *See United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996). Only after the defendant meets the burden of production does the United States have the burden to disprove the defense beyond a reasonable doubt. *See id.* The United States is under no duty to affirmatively produce evidence to refute the defense-of-others claim. *See id*. For the defendant to satisfy the initial burden of production, "there must be evidence [in the trial record] sufficient for a reasonable jury to find in [the defendant's] favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988).[2]

The defendant in this case will be unable to point to any evidence that the officers defending against the rioters' entrance into the Lower West Terrace tunnel used unlawful force, or otherwise

---

[2] *See also United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006) (To establish a prima facie case of self-defense, the defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances.")

13

acted outside the scope of their official duties, *see Drapeau*, 644 F.3d at 653; *Branch*, 91 F.3d at 714, let alone "used sadistic and malicious force . . . for the very purpose of causing [ ] harm," *see Waldman*, 835 F.3d at 755. As a result, the defendant cannot establish her right to act on another rioter's defense. It should be noted that a self-defense (or defense-of-others) claim is "reserved for 'extraordinary circumstances' which 'require nothing less than immediate emergency.'" *United States v. Sahakian*, 453 F.3d 905, 910 (7th Cir. 2006) (quoting *United States v. Bell*, 214 F.3d 1299, 1301 (11th Cir. 2000)). The defendant is unable to establish this affirmative defense.

It should be further noted that the defendant and other rioters were the aggressors in this situation. They came *toward* the police. They initiated the physical encounter that ensued. Instead of trying to avoid an altercation, they instigated one. They knowingly, purposefully, and deliberately engaged physically with officers who were simply trying to stand their ground and prevent an angry mob from entering the Capitol Building. The participants of the January 6th riot should not be permitted to instigate violence, then claim that their violent conduct was justified in self-defense or defense-of-others. In other words, the participants of the riot created the situation in which they found themselves. "A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted). Thus, no other rioter had a right to self-defense for a fight that he or she helped instigate. Much less did this defendant have the right to avenge herself or any other rioter.

Because the defendant has not noticed any defense of this nature, and because even if noticed, the defendant could not establish a *prima facie* showing to establish that she is entitled to such a defense, the government requests the Court prohibit the defendant from raising a claim of self-defense or defense of others.

### D. Jury Nullification: Penalties and Collateral Consequences

The defendant should be prohibited from making arguments or attempting to introduce

14

irrelevant evidence that encourages jury nullification.  As the D.C. Circuit has made clear,

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence.  *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

In particular, the Court should permit no argument, evidence, or questioning regarding the potential penalties faced by a defendant are irrelevant to the jury's verdict.  *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[A] jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))).  Accordingly, the D.C. Circuit has held that "the jury is not to consider the potential punishment which could result from a conviction."  *United States v. Broxton,* 926 F.2d 1180, 1183 (D.C. Cir. 1991).  Any discussion of possible penalties would serve no purpose beside improperly inviting the jury to render a verdict based on sympathy for the defendants – that is, to engage in jury nullification.  *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("[E]vidence which has the effect of inspiring sympathy for the defendant or for the victim … is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

The same goes for any evidence or argument concerning possible collateral consequences of

conviction. Such issues and arguments have no place in this trial and no bearing on the guilt or innocence of the defendant.

## CONCLUSION

For the foregoing reasons, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                DC Bar No. 481052

By:    */s/ Allison K. Ethen*
                ALLISON ETHEN
                MN Bar #0395353
                SHALIN NOHRIA
                DC Bar # 1644392
                United States Attorney's Office
                601 D Street, N.W.
                Washington, DC 20530
                Phone: (612)-664-5575
                Email: Allison.Ethen@usdoj.gov