IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:21-cr-563-JDB |
| Plaintiff, | |
| v. | DEFENDANT'S BRIEF IN SUPPORT OF SENTENCING MEMORANDUM |
| VICTORIA CHARITY WHITE, | |
| Defendant. | |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND................................................................................................3

    A.    White's History and Characteristics ................................................................3

    B.    Nature and Circumstances of the Offense .......................................................4

ARGUMENT..........................................................................................................................6

    I.    Sentencing Procedure.........................................................................................6

    II.    The § 3553(a) factors favor a sentence of probation ......................................6

        A.    The History and Characteristics of the Defendant (§ 3553(a)(1)) ..............6

            1.    Nearly all the § 231(a)(3) cases are more severe than Whites.........7

        B.    Avoiding Unwarranted Sentence Disparities (§ 3553(a)(6))......................10

        C.    The Seriousness of the Offense and Deterrence (§ 3553(a)(2)) ................15

**Introduction**

       Victoria White entered the Lower West Terrace tunnel of the Capitol Building on January 6, 2021 and attempted to push through law enforcement officers. She deeply regrets her conduct. At sentencing, White will express remorse for her involvement in the events at the Capitol that day

1

and will vow never again to interfere with officers during a riot, the offense to which she pleaded guilty. 18 U.S.C. § 231(a)(3).

Although White's conduct was hardly unique that day, the charges she faced were unusual when one compares her actions with those of other January 6th defendants. White did not enter the Capitol Building until she was apprehended in the lower west tunnel and taken into the Capitol Building by law enforcement. She did not destroy property or assault any law enforcement officer. In fact, prior to her being apprehended inside the tunnel, an officer struck White with a metal baton on her head, opening a wound and causing her to bleed profusely. Yet White was charged not only with a felony civil disorder offense but also with entering and remaining in a restricted building under § 1752(a)(1), disorderly and disruptive conduct in a restricted building or grounds under § 1752(a)(2), and disorderly conduct in a capitol building or grounds under 40 U.S.C § 5104(e)(2)(D).

Surveying § 231(a)(3) charges in other January 6th cases shows that, unlike many other rioters charged with a civil disorder offense, White did not attempt to assault law enforcement officers, enter the Capitol Building, move bike racks or fencing, or destroy any property. White admits she attempted to push through the police line in the Lower West Terrace Tunnel and accepts responsibility for this conduct. White agrees with the computation of her criminal history category and offense level, resulting in a Guidelines range of 0-6 months' incarceration.

Given that White's conduct is less severe than nearly every other defendant charged under § 231(a)(3)—indeed, less severe than the conduct of dozens of misdemeanants who actually entered the Capitol—and in light of injuries she incurred from law enforcement when she was taken into custody, she submits that her felony conviction, coupled with a sentence of three months' home detention, 24 months' probation, and a fine would be sufficient but not greater than necessary to comply with the purposes of § 3553(a).

**Factual Background**

    A.    **White's History and Characteristics**

White's parents divorced prior to her birth and her father, Dennis White, was not involved with White's upbringing. PSR ¶ 60. White has no memory of her father. PSR ¶ 63. White was abandoned by her mother, Marcene, when White was only three months old. PSR ¶ 60. Marcene struggled with mental illness throughout her life and was not involved in White's childhood. PSR ¶ 64. White never had a meaningful relationship with her mother. *Id*.

White was the youngest of ten siblings and Marcene left White to be raised by her second oldest sister, Betty. PSR ¶60. Betty was still a minor when she became White's caretaker. *Id*. When White was six months old the responsibility for her upbringing was assumed by her eldest sister, Mary. *Id*. Mary, still only 18 years old, struggled to provide for White and was not able to ensure White's basic needs were met. *Id*. White believed Mary to be her biological mother until she was eight years old, when Mary's abusive husband told White the truth. *Id*. He was physically and verbally abusive towards White, requiring intervention by protective services. *Id*.

White graduated from high school in 2000 and obtained her Certified Nursing Assistant (CNA) in 2003. PSR ¶ 99, 100. White's oldest daughter, Tatianna, was born 2003, from her relationship with Sandy Kimball. PSR ¶ 82. White's second oldest daughter, Alona, was born in 2005 from a brief relationship with James Reed, who is currently incarcerated for murder and attempted murder. PSR ¶ 81. White's two youngest children, Nevaeh (age 16) and Kendra (age 15), are the result of a five-year relationship with Andre Sanders. PSR ¶ 80. Sanders ended the relationship after the birth of their youngest daughter due to her having health issues. *Id*. White is the primary caretaker for her children. She maintains a close relationship with all her children and has sole custody of the two minor children. The minor children's father is not involved.

White had a ten-year relationship with Ricardo Owens that ended in 2013. PSR ¶ 79. White's relationship with Owens was "horrible" due to his extreme abuse. *Id*. White is "lucky to be alive" as she survived daily abuse by Owens. *Id*. White suffered numerous injuries that required medical treatment, including a broken foot and skull fracture. *Id*. Eventually, White was able to end the relationship and obtain a 50-year protective order. *Id*. White has been diagnosed with post-traumatic stress disorder, which she manages with medication. PSR ¶ 90, 92.

      B.      **Nature and Circumstances of the Offense**

As indicated, White pleaded guilty to interfering with law enforcement officers during a civil disorder under § 231(a)(3). In her plea agreement, the parties agreed that a base offense level of 10 applied under U.S.S.G. §2A2.4(a). ECF No. 81, p. 3. White has clearly demonstrated responsibility resulting in a total offense level of 8. Signed contemporaneous with her plea agreement, White's statement of the offense stipulated the following facts, among others:

      1.      On December 17, 2020, during a live-feed YouTube show that White participated in, White expressed the need for more serious action against "corrupt politicians." In response to an individual on the show encouraging White to not get herself in trouble, White stated: "If we don't stand now, if we don't fight back now, even if we do it without violence, right? If we aren't willing to take the risk of getting arrested." ECF No. 82, pg 4.

      2.      On January 6, 2021, White approached the west front of the Capitol Building where a large group of rioters had formed on the steps on the Lower West Terrace. ECF No. 82, p. 4.

      3.      At 3:45, White made her way from the top steps near a window on the Lower West Terrace toward the tunnel entrance to the Lower West Terrace that was packed with rioters pushing against Metropolitan Police Department ("MPD") officers in riot gear. White encouraged the others to push forward ECF No. 82, p. 4.

4.	By 4:07 P.M., White made her way to the front of the crowd in the tunnel directly in the front line of MPD officers. White and others attempted to push through the line of MPD officers, who were using their shields and batons to keep the crowd back. ECF No. 82, p. 5.

5.	MPD apprehended White at 4:11. ECF No. 82, p. 5.

6.	In the days after January 6th, White participated in an interview and stated she was "pushing to get in because I'm assuming it's just another doorway to go up to the next level." ECF No. 82, p. 5.

7.	In a second interview, White described the tunnel as follows:

"People are trying to get through or push through. But when people are pushing, you have to understand, it's like a mass of people. A lot of people crammed together and ya know the police are right there and they were like spraying everyone like macing them. And then I look a police officer and I'm like, you took an oath to the Constitution, and apparently that didn't sit so well with him, and he decided to hit me really hard on the head with a metal baton."

ECF No. 82, p. 5.

Significant is White's effort to stop other rioters from vandalizing and destroying the Capitol Building. Prior to making her way into the Lower West Terrace tunnel, White was near a window at the top of the steps. Rioters were smashing the window with metal poles, attempting to break through the window when White physically intervened and pulled the vandalizer away from the building. Exhibit B. White pleaded with the vandalizer to stop, stating "we don't do that shit." Exhibit A. White contends her efforts to prevent destruction of the Capitol Building are mitigating and worthy of consideration.

Noteworthy is the injury suffered by White when she was apprehended. Soon after White made her way to the front of the tunnel, she attempted to push through the line of MPD officers. An officer swung his metal baton over the line and struck White more than a dozen times on her head. Exhibit C. In Exhibit C, an MPD officer wearing a white shirt in the lower left corner of the

video is seen reaching over a riot shield and striking White more than a dozen times.[1] These blows to White's head caused her to bleed profusely. Exhibit D. Law enforcement officers then pulled White through the line and took her into custody. White was compliant with officers as she was lead through the Capitol Building to a holding cell. White only entered the Capitol Building after being taken into MPD custody.

**Argument**

    I.    **Sentencing Procedure**

As the Court is well aware, it has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101.

The Court must merely impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661. As the Court knows, the cardinal requirement of § 3553(a) is that the "court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a).

    II.    **The § 3553(a) factors favor a sentence of probation**

        A.    **The History and Characteristics of the Defendant (§ 3553(a)(1))**

A number of considerations under § 3553(a)(1) merit a sentence of probation or home detention in White's case: (1) her facts are considerably less severe than virtually every other §

---

[1] The referenced portion of the video starts at the 5:43 minute mark of the video.

231(a)(3) January 6th conviction; (2) White's attempts at preventing vandalism to the Capitol Building on January 6th; (3) White's treatment during her apprehension; and (4) White's remorse.

### 1.     Nearly all the § 231(a)(3) cases are more severe than White's

White pleaded guilty to § 231(a)(3) and admitted to interfering with law enforcement officers carrying out their duties. While she did not remove barriers so other rioters could access the Capitol Building and she did not parade through the Capitol Building, she did push to the front of the crowd and attempted to push through the line of MPD officers. White was at the front of the crowd for approximately four minutes before she was arrested. Prior to apprehending White, an MPD officer struck her with a metal baton on the head, causing her to bleed. Exhibits C & D. Unlike most of the other January 6th cases, White never entered the Capitol building prior to being arrested.

While White was at the front of the crowd pushing to get through the police line, she never assaulted an officer, sprayed bear spray at officers, or threw objects at officers. That distinguishes her case from many of the other January 6th defendants charged under § 231(a)(3):

| § 231(a)(3) 1/6 Defendant | Case No. | Violent criminal conduct |
|---|---|---|
| Adams | 21-cr-84 | Pushed police officers against a wall |
| Alam | 21-cr-190 | Threw punches at law enforcement |
| Antonio | 21-cr-497 | Threw objects at police |
| Ballard | 21-mj-529 | Threw tabletop at police |
| Bingham | 21-mj-430 | Threw punch at officer |
| Brock | 21-mj-527 | Striking police with rod |
| Brockhoff | 21-mj-444 | Shooting fire extinguisher at police |
| Brown | 21-mj-565 | Spraying pepper spray in officers' faces |
| Brown | 21-mj-498 | Punching police |

| Buteau | 21-mj-487 | Throwing hard objects at police |
|---|---|---|
| Byerly | 21-mj-500 | Tasing police |
| Caldwell | 21-cr-181 | Spraying pepper spray at police |
| Coffee | 21-cr-327 | Hitting officer with crutch |
| Dasilva | 21-mj-520 | Grabbing, pushing and pulling police |
| DeGrave | 2021 U.S. Dist. LEXIS 92102 | "Coming to blows" with police |
| Egtvedt | 21-cr-177 | Throwing punches at police |
| Fairlamb | 21-cr-120 | Shoving and punching police |
| Fitzsimons | 21-cr-158 | Punching officers |
| Foy | 2021 U.S. Dist. LEXIS 123953 | Swinging hockey stick and throwing objects at police |
| Galetto | 21-mj-386 | Knocking officer to the ground |
| Jenkins | 21-cr-245 | Throwing pole at officers |
| Johnson | 21-cr-332 | Knocking over officer who falls unconscious |
| Judd | 21-cr-40 | Throwing object on fire at police |
| Klein | 21-cr-236 | Striking officers with shield |
| Lang | 21-cr-53 | Thrusting a bat and shield at officers |
| Languerand | 21-cr-353 | Throwing garbage cans at officers |
| Lazar | 21-mj-533 | Spraying chemicals at police |
| Mackrell | 21-cr-276 | Striking multiple officers |
| McCaughey III | 21-cr-40 | Striking multiple officers |
| McGrew | 21-cr-398 | Striking officer |
| McHugh | 21-cr-453 | Macing officers |
| McKellop | 21-cr-268 | Macing officers |
| Mellis | 21-cr-206 | Striking officers with a stick |
| Middleton | 21-cr-367 | Poking officers in the face |
| Miller | 21-cr-75 | Spraying officers with pepper spray |
| Morss | 21-cr-40 | Striking officer with shield |
| Mullins | 21-cr-35 | Assaulting officer |

| Nichols | 21-cr-117 | Spraying pepper spray at officers |
|---|---|---|
| Owens | 21-cr-286 | Striking officer in the head with skateboard |
| Padilla | 21-cr-214 | Ramming cop with metal sign |
| Palmer | 21-cr-328 | Spraying fire extinguisher in face of officer |
| Pezzola | 21-cr-52 | Smashing large window of Congress, a crime of violence |
| Quaglin | 21-cr-40 | Striking multiple officers |
| Randolph | 21-cr-332 | Assaulting officer |
| Sabol | 21-cr-35 | Striking officer |
| Sandlin | 21-cr-88 | Attempting to rip helmet off officer |
| Sandford | 21-cr-86 | Throws fire extinguisher at officers |
| Sargent | 21-cr-258 | Throwing punches at officers |
| Schwartz | 21-cr-178 | Bear spraying officers |
| Shively | 21-cr-151 | Assaulting officers |
| Sibick | 21-cr-291 | Attempting to take officer's gun, while threatening to kill him |
| Stager | 21-cr-35 | Smashing officer with flag pole |
| Stevens | 21-cr-40 | Striking officer with shield |
| Webster | 21-cr-208 | Striking officer with flag pole |
| Woods | 21-cr-476 | Tripping officer and pushing her to ground |

That White's interfering acts did not involve physical violence or physical harm to an officer warrants a sentence of probation or home detention.

A defendant's remorse, whether exceptional or not, is a factor to be considered at sentencing and may merit a sentence at the lower end of the range. White deeply regrets her

9

decision to interfere with law enforcement officers on January 6th. White will personally demonstrate remorse at sentencing in her allocution and will leave little doubt about her feelings.

### B. Avoiding Unwarranted Sentence Disparities (§ 3553(a)(6))

Section 3553(a) requires courts to fashion a sentence in a way that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Although White has been convicted of a felony offense, it must be borne in mind that her offense conduct is similar to that of many January 6th misdemeanants and in some cases is less severe. After all, unlike hundreds of January 6th defendants, White did not enter the Capitol Building and act in a disorderly manner inside the Capitol Building:

| 1/6 Def. & Case No. | Charge | Sentence | Offense Conduct |
|---|---|---|---|
| Josh & Jessica Bustle, 21cr238 | Parading in Capitol | 24 mos. probation and 24 mos. supervised release | Entered Capitol Building, remained for 20 minutes. Posted on Facebook, "Pence is a traitor. We stormed the capital (sic). . . We need a revolution!" |
| Bryan Ivey, 21cr267 | Parading in Capitol | 36 mos. probation | Entered Capitol Building through a breached window, waving additional rioters into the building, spending 30 minutes inside. |
| Valerie Ehrke, 21cr97 | Parading in Capitol | 36 mos. probation | Entered Capitol Building. |
| Danielle Doyle, 21cr324 | Parading in Capitol | 2 mos. probation | Entered the Capitol Building by climbing through broken window, remained inside for about 30 minutes. |

| Andrew Bennett, 21cr227 | Parading in Capitol | 3 mos. home confinement, 24 mos. probation | Entered the Capitol Building, livestreaming the event on his Facebook page for over an hour. |
|---|---|---|---|
| Lori, Thomas Vinson, 21cr355 | Parading in Capitol | 5 years probation, 120 hours of community service | Entered the Capitol Building, later telling news outlet that her actions were "justified" and that she would "do this all over again." |
| Jordan Stotts, 21cr272 | Parading in Capitol | 24 mos. probation | Entered the Capitol Building, remained inside for an hour, celebrating with others and taking videos with his cell phone. |
| Jenny Cudd, 21cr68 | Parading in Capitol, Entering Restricted Area | 2 mos. probation | Entered the Capitol Building. |
| Glen Croy, 21cr162 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building. Chief Judge suggested at plea hearing that parading offense is not conceptually different from government's obstruction of justice charge under § 1512(c)(2) |
| Douglas Sweet, Cindy Fitchett, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, Fitchett filming herself saying, "We are storming the Capitol. We have broken in." |
| Eric Torrens, 21cr204 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking celebratory pictures in the Crypt. |
| Rasha Abdual-Ragheb, 21cr42 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, desiring to demonstrate against Congress. |

| | | | |
|---|---|---|---|
| Jonathan Sanders, 21cr384 | Parading in the Capitol | 36 mos. probation, 60 hours community service | Entered the Capitol Building, intending to protest presidential election |
| Michael Orangias, 21cr265 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures inside. |
| John Wilkerson, 21cr302 | Parading in the Capitol | 36 mos. probation, 60 hours of community service | Entered the Capitol Building, posting on social media, "today was a good day, we got inside the Capitol." |
| Brandon Nelson, 21cr344 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, co-defendant texting, "We stormed the Capitol and shut it down. Currently still inside" and "Patriots won't go down without a fight." |
| Andrew Wrigley, 21cr42 | Parading in the Capitol | 18 mos. probation | Entered the Capitol Building, taking pictures of himself inside |
| Jacob Hiles, 21cr155 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures showing him smoking "an unknown substance" inside. |
| Bruce Harrison, 21cr365 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures of himself inside. |
| Terry Brown, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, disobeyed police order to leave. |
| Felipe Marquez, 21cr136 | Disorderly conduct in the Capitol | 18 mos. probation | Entered the "hideaway" office of Senator Merkley, saying, "We only broke a couple windows." |

12

| | | | |
|---|---|---|---|
| Michael Rusyn, 21cr303 | Parading in the Capitol | 24 mos. probation | Among the first to enter the Capitol through a certain door, part of a group of people who shouted, "Tell Pelosi we're coming for that b****," called police traitors, and shouted "Stop the steal." |
| Andrew Hatley, 21cr98 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures with various historical statues. |
| Nicholas Reimler, 21cr239 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures of himself and friends. |
| Caleb Jones, 21cr321 | Parading in the Capitol | 2 mos. home confinement, 24 mos. probation | Entered the Capitol Building, "walking down numerous hallways and into the Capitol Rotunda." |
| Andrew Ericson, 21cr506 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, penetrating all the way to the Speaker's conference room, stealing a possession of the Speaker's. |
| Anthony R. Mariotto, 21cr94 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, posting on Facebook, "This is our house" under selfie photograph. |
| Michael Stepakoff, 21cr96 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, posting on social media after, "The Capitol is OUR house, not theirs." |
| Tanner Sells, 21cr549 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building. |
| Gary Edwards, 21cr366 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, including Senate office S140. |

| Zachary, Kelsey Wilson, 21cr578 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, penetrating all the way to the Speaker's personal office |
| Jennifer Parks, Esther Schwemmer, 21cr363 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures inside |
| Jackson Kostolsky, 21cr197 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building |
| Eduardo Gonzalez, 21cr115 | Parading in the Capitol | 24 mos. probation | Entered the Capitol, smoking marijuana inside "multiple times." |
| Rachael Pert, Dana Winn, 21cr139 | Entering a restricted area | 12 mos. probation | Entered the Capitol Building, Pert later saying, "We were trying to storm them to stop the vote . . ." |
| Israel Tutrow, 21-cr-310 | Parading in a Capitol | 36 mos probation | Entered the Capitol Building with a knife |

A recent January 6th defendant convicted of the same offense bears a striking resemblance to White's offense conduct. Like White, Stephanie Hazelton, 21-cr-30-JDB, pleaded guilty to Civil Disorder, in violation of § 231(a)(3). Like White, Hazelton was in the Lower West Terrace Tunnel. Hazelton encouraged rioters to move into the tunnel with her and attempted to push her way towards the front of the crowd to confront the MPD officers. See *US v Hazelton*, 21-cr-30 ECF No. 46, p. 4. Hazelton remained at the front of the mob as rioters used strobe lights to blind MPD officers and batons and poles to assault the MPD officers. *Id*. Hazelton left the tunnel and attempted to recruit men to enter the tunnel to attempt to push the mob past the line of MPD officers. *Id.* For her criminal conduct, Hazelton was sentenced to ten days of incarceration and ninety days home detention. 21-cr-30, ECF No. 59.

In light of White's similar conduct, her intervention in stopping rioters from destroying property, and the beating she suffered by MPD officers, she would submit that twenty-four months of probation to include ninety days of home detention is sufficient to meet the goals of sentencing.

Sentencing White to a term of incarceration in excess of ten days when other January 6th defendants who received probationary sentences or similar days of incarceration that entered the Capitol Building and engaged in disorderly conduct there would create unwarranted sentence disparities.

### C. The Seriousness of the Offense and Deterrence (§ 3553(a)(2))

The Court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." § 3553(a)(2).

For spontaneous actions that barely lasted more than a couple of hours, White's criminal record now includes a felony conviction, though she committed no acts of violence or property destruction. In fact, White attempted to prevent other rioters from damaging property. Since January 6th, White has experienced extensive public scrutiny through the media focus on her case as she is one of the more known January 6th defendants due to the injury she incurred during her apprehension. Admittedly, White has brought some of this attention on herself by participating in interviews and maintaining a social media account.

The government has offered no evidence to suggest that these penalties, coupled with home detention, probation, and a fine, are insufficient to achieve specific deterrence in a 42-year-old mother with minimal criminal history, much less that three month's incarceration is "not greater than necessary to comply with the purposes of [§ 3553(a)]. . ." § 3553(a).

White only entered the Capitol Building after she was apprehended. While she attempted to push her way through the police line, she did not assault any officers or destroy property like

many of the other January 6th defendants. She traveled to D.C. to participate in the rally and show support for then-president Trump. She had no predetermined intent to riot or breach the Capitol Building. While mob mentality is no excuse for White's behavior, it is clear that she was swept up in the moment like thousands of other people near the Capitol Grounds and acted in a manner that is incongruent with everything known about her. She has no history of political extremism or known involvement in militant organizations. This case has already turned White's life upside down. The government's suggestion that these heavy blows are insufficient to deter the one-time, situational crime White committed is nonsense.

For all the foregoing reasons, White respectfully requests a sentence not greater than three months' home detention, 24 months' probation, and a significant fine.

Respectfully submitted,

/s/ Zach Crowdes
FEDERAL DEFENDER'S OFFICE
222 Third Ave SE, Suite 290
Cedar Rapids, Iowa 52401
PHONE: (319) 363-9540
E-MAIL:  zach_crowdes@fd.org

/s/ Brad Hansen
FEDERAL DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE:  (515) 309-9610
FAX: (515) 309-9625
E-MAIL:  brad_hansen@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

By:  /s/ Angie McClain